JS 44 (Rev 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as require by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorneys (Firm Name, Address, and Telephone Number)
Gerald B. Sullivan, Assistant U.S. Attorney
U.S. Attorney's Office, 615 Chestnut St., Suite 1250
Philadelphia, PA 19106-4476

## DEFENDANTS

MILLER'S ORGANIC FARM and AMOS MILLER
648 Millcreek School Road, Bird-in-Hand, PA 17505

County of Residence of First Listed Defendant    Lancaster
(IN U.S. PLAINTIFF CASES ONLY)

NOTE   IN LAND CONDEMNATION CASES USE THE LOCATION OF
THE TRACT OF LAND INVOLVED

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1  U S Government
Plaintiff

☐ 2  U S Government
Defendant

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box)

Click here for Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☒ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U S Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity)

Brief description of cause
Action to enjoin violations of Federal Meat Inspection Act and Poultry Products Inspection Act

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F R Cv P

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE Edward Smith (terminated March 2017)   DOCKET NUMBER 16-cv-2731

DATE
04/04/2019

SIGNATURE OF ATTORNEY OF RECORD
/s/ Gerald B. Sullivan  AUSA

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG JUDGE

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

UNITED STATES OF AMERICA

      Plaintiff,

              v                    CIVIL ACTION
                                 NO.

MILLER'S ORGANIC FARM and
AMOS MILLER,

      Defendants.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.       ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.       ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.       ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management
    by the court. (See reverse side of this form for a detailed explanation of special
    management cases.)       ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (X)

| | | |
|---|---|---|
| April 4, 2019 | | United States of America |
| **Date** | **GERALD B. SULLIVAN, AUSA** | **Attorney for Plaintiff** |
| 215-861-8786 | 215-861-8618 | Gerald.Sullivan@usdoj.gov |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 615 Chestnut St., Suite 1250, Philadelphia, PA 19106-4476

Address of Defendant 648 Millcreek School Road

Place of Accident, Incident or Transaction Bird-in-Hand, PA 17505

---

**RELATED CASE, IF ANY:**

Case Number: 16-cv-2732   Judge Edward Smith   Date Terminated: 03/28/2017

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 04/04/2019                          57300 (PA)

*Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.   *Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☑ 11. All other Federal Question Cases
  *(Please specify)*   21 U.S.C. §§ 467c and 674

**B.   *Diversity Jurisdiction Cases***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify)*

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration )*

I, Gerald B. Sullivan, AUSA , counsel of record *or* pro se plaintiff, do hereby certify

☐ Pursuant to Local Civil Rule 53 2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: 04/04/2019                          57300 (PA)

*Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F R C P 38

*Civ 609 (5 2018)*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| **Plaintiff,** | :    **CIVIL ACTION** |
| | :    **NO.** |
| v. | : |
| | : |
| **MILLER'S ORGANIC FARM and** | : |
| **AMOS MILLER,** | : |
| | : |
| **Defendants.** | : |

## COMPLAINT FOR PERMANENT INJUNCTION

Plaintiff United States of America, through the United States Attorney for the Eastern

District of Pennsylvania, avers as follows:

### INTRODUCTION

1.     On behalf of the Food Safety and Inspection Service ("FSIS"), the United States

brings this statutory injunction proceeding under 21 U.S.C. §§ 467c and 674.

2.     As an agency within the United States Department of Agriculture ("USDA"),

FSIS is charged with enforcing both the Federal Meat Inspection Act, 21 U.S.C. § 601, *et seq.*

(the "Meat Act" or "FMIA"), and the Poultry Products Inspection Act, 21 U.S.C. § 451, *et seq.*

(the "Poultry Act" or "PPIA"), among other laws. *See* Declaration of Troy Hambright, Team

Lead Compliance Specialist, FSIS Enforcement Operations Branch ("Hambright Decl."), which

is attached as Exhibit "A" and supports this Complaint, at ¶ 8.

3.     Congress enacted the Meat Act and the Poultry Act ("the Acts") to protect

consumers' health and welfare, by assuring that meat and poultry products are wholesome,

unadulterated, and properly marked, labeled, and packaged. *See* 21 U.S.C. §§ 451, 452, 602

(Congressional statements of findings and policy); Hambright Decl., ¶ 8. The Acts empower the

Secretary of Agriculture (and, through delegation, FSIS) to regulate and inspect meat, poultry,

meat food products, and poultry products that are both intended for human consumption and prepared for distribution in commerce.

4.     This action follows the United States' 2016-2017 subpoena enforcement action in the Eastern District of Pennsylvania against Miller's Organic Farm and its owner, Amos Miller (collectively, "Miller's"), both of Lancaster County, Pennsylvania. *See United States v. Miller's Organic Farm and Amos Miller*, EDPA No. 16-cv-2731. In that action, this Court enforced FSIS' subpoena demands that Miller's make meat and poultry records and facilities sufficiently available to enable the agency to assess: (a) product safety; (b) any need for federal inspection; and (c) related compliance with the Acts.

5.     Miller's business is neither small-scale nor primarily local. During just three months in mid-2016, for example, Miller's commercially sold to nationwide customers at least 9,015 pounds of red meat food products (for $85,062.00) and 5,085 pounds of poultry products (for $39,050.00). *See* Supporting Declaration of Paul Flanagan, Investigator within FSIS' Office of Investigation, Enforcement, and Audit ("Flanagan Decl."), which is attached as Exhibit "B," at ¶¶ 6, 19, 23.

6.     Under the Acts, establishments like Miller's, unless they have a USDA-approved exemption (which Miller's does not have or qualify for based on its current business model), must obtain a USDA-FSIS "Federal Grant of Inspection" before they may slaughter, prepare, process, or sell for distribution meat, poultry, meat food products, or poultry products. Federally inspected establishments must: (a) demonstrate the ability to meet USDA-FSIS requirements for producing safe, wholesome, and properly labeled products; (b) satisfy sanitation, facility, and operational standards; and (c) have food safety programs. Hambright Decl., ¶¶ 10, 12-16;

2

Flanagan Decl., ¶ 25; *see also* 21 U.S.C. §§ 455-457 (Poultry Act); 21 U.S.C. §§ 603-608 (Meat Act); 9 C.F.R. Parts 304-317, 381 (Subparts D, E, J, K, and N), 416, and 417.

       7.     This civil action is necessary because Miller's, despite having received from FSIS separate February 2017 and May 2017 written notices of warning, and having had abundant opportunity to correct FSIS-noticed violations, has persisted in: (a) violating the Acts' federal inspection requirements; (b) marketing misbranded meat and poultry products; and (c) refusing FSIS' offers to assist the farm to comply with the Acts.

       8.     The United States now seeks permanently to enjoin and restrain Miller's Organic Farm and Amos Miller from further endangering public health and safety by their:

       a.     continuing to violate 21 U.S.C. §§ 458(a)(1), 458(a)(2)(B), 610(a), and 610(c)(2), through slaughtering, processing, offering for sale, selling, offering for transport, and transporting, in commerce, meat, meat food products, poultry, and poultry products that the Acts require be federally inspected but that have not been federally inspected;

       b.     continuing to violate 21 U.S.C. §§ 458(a)(2)(A) and 610(c)(1), through selling, transporting, offering for sale or transportation, or receiving for transportation, in commerce, meat, meat food products, poultry, and poultry products that are capable of use as human food but that are misbranded at the time of such sale, transportation, offer for sale or transportation, or receipt for transportation, because, for example, the products, though intended for commercial sales, have not been federally inspected and lack accurate "federally inspected" label language that is required for commercially sold products; and

    c.     continuing to violate 21 U.S.C. §§ 460(b) and 642, through refusing to

provide FSIS investigators with necessary access to Miller's (i) records on meat and poultry

product sales in commerce, and (ii) meat and poultry slaughter and processing facilities.

## JURISDICTION AND VENUE

9.     The Court has jurisdiction over the subject matter and all parties in this action

under 21 U.S.C. § 674 and 28 U.S.C. §§ 1331, 1337, and 1345. Under its general equity power,

the Court also has jurisdiction to enjoin conduct from occurring that endangers public health and

safety, such as conduct that violates the Acts and their implementing regulations.

10.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1395, because

violations of the Acts are occurring – and defendants have their principal place of business – in

Lancaster County, Pennsylvania, which is within this District.

## THE PARTIES

11.     Plaintiff is the United States of America, on behalf of FSIS. The USDA

Undersecretary for Food Safety has delegated to FSIS the power to enforce the Acts. *See* 7

C.F.R. §§ 2.53(a)(2)(i), (ii); Hambright Decl., ¶ 8.

12.     A self-styled "private membership association," defendant Miller's Organic Farm,

which is also known as Amos Miller Organic Farm, is an unincorporated, non-partnership farm

business located at 648 Millcreek School Road, Bird-in-Hand, Pennsylvania 17505. Flanagan

Decl., ¶ 6.

13.     Defendant Amos Miller solely owns Miller's Organic Farm, which, on

information and belief, files its tax returns under his name. Mr. Miller resides on the farm

property at 648 Millcreek School Road, Bird-in-Hand, Pennsylvania 17505. He is responsible

for, and has authority over, all of the meat and poultry operations at Miller's Organic Farm.

Flanagan Decl., ¶ 6; *see also United States v. Miller's Organic Farm and Amos Miller*, EDPA

No. 16-cv-2732, Docket Entry No. 7 (Order), at p. 1 and Finding No. 1.

14.     At its farm site, Miller's: (a) slaughters, processes, and stores meat and poultry

products; and (b) operates a dairy and retail store business. The store business includes in-person,

telephonic, email, and internet sales of meat, poultry, meat food products, and poultry products

that require federal inspection. Telephonic, email, and internet sales include sales to customers

who are located throughout the United States and that Miller's fulfills itself by transporting, or

by arranging delivery services to transport, the purchased products. Flanagan Decl. ¶¶ 6, 19, 23.

## LEGAL STANDARDS

### Provisions of the Meat and Poultry Acts

#### *The Meat Act*

15.     The Meat Act prohibits selling, transporting, offering for sale or transportation, or

receiving for transportation, in interstate commerce – unless first USDA/FSIS-inspected and

passed – meat or meat food products that are capable of being used as human food. 21 U.S.C.

§ 610(c)(2).

16.     In 21 U.S.C. § 661(c) and 9 C.F.R. § 331.2, Congress and the Secretary of

Agriculture have designated Pennsylvania as a state that is subject to Titles I and IV of the Meat

Act (21 U.S.C. §§ 601 to 624 and 671 to 680). As a result, these Titles apply even to Miller's

meat slaughter and processing operations and transactions that occur wholly *intrastate* within

Pennsylvania, to the same extent and in the same manner as if Miller's conducted the operations

and transactions in or for interstate commerce. *See* Hambright Decl., ¶ 8.

5

17.     Among the provisions of Titles I and IV of the Meat Act that apply even to

Miller's *intrastate* operations and transactions in Pennsylvania are those that:

        a.      authorize FSIS inspectors to conduct ante-mortem inspection of Miller's

livestock and post-mortem inspection of their carcasses and resulting meat

food products, in order to prevent any adulterated meat or meat food

product that is capable of being used as human food from entering into,

flowing within, or burdening commerce (*see* 21 U.S.C. §§ 604, 606);

        b.      restrict Miller's from slaughtering any such livestock, and from preparing

for commerce any such meat or meat products, except in compliance with

Meat Act requirements (*see* 21 U.S.C. § 610(a));

        c.      restrict Miller's from selling in commerce, transporting in commerce,

offering for sale or transportation in commerce, or receiving for

transportation in commerce, any meat or meat products that the Meat Act

requires be federally inspected, unless first USDA/FSIS-inspected and

USDA/FSIS-passed (*see* 21 U.S.C. § 610(c)(2));

        d.      prohibit Miller's from selling, transporting, offering for sale or

transportation, or receiving for transportation, in commerce, meat or meat

food products that are capable of use as human food but misbranded (for

example, by virtue of labeling that is false or misleading because lacking

accurate "Not for Sale" or "federally inspected" product identification) at

the time of such sale, transportation, offer for sale or transportation, or

receipt for transportation (*see* 21 U.S.C. §§ 601(n)(1), 610(c)(1)); and

e.      authorize USDA: (i) to have access to Miller's business facilities that

involve the processing, sale, or transport of meat or meat food products;

(ii) to examine those facilities and related inventory and records; (iii) to

copy such records; and (iv) to take reasonable samples of Miller's meat

and meat food product inventory, upon payment of fair market value. *See*

21 U.S.C. § 642.

### *The Poultry Act*

18.     The Poultry Act similarly prohibits selling, transporting, offering for sale or

transportation, or receiving for transportation, in interstate commerce – unless first USDA/FSIS-

inspected and passed – poultry or poultry products that are capable of being used as human food.

21 U.S.C. § 458(a)(2)(B).

19.     Under 21 U.S.C. § 454(c)(1) and 9 C.F.R. § 381.221, Pennsylvania has been

designated as a state to which Sections 451-453, 455-459, and 461-467d of the Poultry Act

apply. These sections apply even to Miller's poultry operations and transactions that occur

wholly *intrastate* within Pennsylvania, to the same extent and in the same manner as if Miller's

conducted the operations and transactions in or for interstate commerce. *See* Hambright Decl.,

¶ 8.

20.     Among the Poultry Act provisions that apply even to Miller's *intrastate*

operations and transactions in Pennsylvania are those that:

a.      authorize FSIS inspectors to conduct ante-mortem inspection of Miller's

poultry, and post-mortem inspection of their carcasses and the resulting

poultry products, in order to prevent any adulterated poultry or poultry

7

product that is capable of being used as human food from entering into, flowing within, or burdening commerce (*see* 21 U.S.C. §§ 455(a), (b));

b.  restrict Miller's from slaughtering any such poultry, and from preparing for commerce any such poultry or poultry products, except in compliance with Poultry Act requirements (*see* 21 U.S.C. § 458(a)(1));

c.  restrict Miller's from selling in commerce, transporting in commerce, offering for sale or transportation in commerce, or receiving for transportation in commerce, any poultry or poultry products that the Poultry Act requires be federally inspected, unless first USDA/FSIS-inspected and USDA/FSIS-passed (*see* 21 U.S.C. § 458(a)(2)(B));

d.  prohibit Miller's from selling, transporting, offering for sale or transportation, or receiving for transportation, in commerce, poultry or poultry products that are capable of use as human food but misbranded (for example, by virtue of labeling that is false or misleading because it lacks accurate "Not for Sale" or "federally inspected" product identification) at the time of such sale, transportation, offer for sale or transportation, or receipt for transportation (see 21 U.S.C. §§ 453(h)(1), 458(a)(2)(A)); and

e.  authorize USDA: (i) to have access to Miller's business facilities involving the processing, sale, or transport of poultry or poultry products; (ii) to examine those facilities and related inventory and records; (iii) to copy such records; and (iv) to take reasonable samples of Miller's poultry

and poultry product inventory, upon payment of fair market value *See* 21

U.S.C. § 460(b).

## FACTUAL ALLEGATIONS

### The Subpoena Enforcement Action

21.     In early 2016, FSIS received second-hand information that Miller's was – without

required federal inspection, and in possible violation of the Acts – slaughtering, processing, and

selling meat, meat food products, poultry, and poultry products. Flanagan Decl. ¶ 9.

22.     In order to assess that information through what is known as a "verification

review," FSIS unsuccessfully tried to gain access to Miller's meat and poultry facilities and

business records without having to issue a subpoena. Flanagan Decl. ¶¶ 5, 9.

23.     FSIS verification reviews seek to ensure that facilities like Miller's are, at a

minimum, complying with the Acts and their implementing regulations relating to sanitation,

recordkeeping, labeling, and other requirements. Such reviews fulfill the agency's mission to

ensure that meat and poultry products intended for both human consumption and sale/distribution

in commerce are safe, wholesome, not adulterated, and correctly marked, labeled, and packaged.

Hambright Decl., ¶¶ 8, 17; Flanagan Decl., ¶¶ 4-5.

24.     In April 2016, because Miller's refused to grant surveillance access to FSIS, the

USDA-FSIS Administrator served Amos Miller with a subpoena duces tecum requiring Miller's

to provide the agency with access to the farm's: (a) meat-related and poultry-related facilities;

and (b) post-January 1, 2016 business records. Miller's persisted, however, in refusing to provide

such access. Flanagan Decl. ¶ 10; *see also United States v. Miller's Organic Farm and Amos

Miller*, EDPA No. 16-cv-2732, Docket Entry No. 7, at p. 2 and Finding Nos. 4 through 9 (finding

9

that: (i) USDA had the power to issue the subpoena, which sought relevant information and access; and (ii) "Defendants refused to comply with the subpoena, on grounds that it infringed their First Amendment right to freedom of association, because Miller Organic Farm is a 'Private Membership Association'").

25.     The United States therefore, on June 3, 2016, sued Miller's in this Court to enforce the agency's subpoena. *United States v. Miller's Organic Farm and Amos Miller*, EDPA No. 16-cv-2732 (the "Subpoena Enforcement Action"), Docket Entry No. 1.

26.     In late June 2016, following a hearing at which both defendants appeared *pro se*, the Court in the Subpoena Enforcement Action (the Honorable Edward G. Smith) ordered enforcement of the subpoena and required Miller's to give FSIS access to the farm's meat-and-poultry-related facilities and records. *Id.*, Dkt. Entry No. 7, at pp. 1-2, Finding No. 3 ("Because Miller's Organic Farm is a slaughtering and/or processing facility, defendants are obliged to provide the USDA with: (a) access to the farm's business operations; and (b) an opportunity to examine defendants' facilities, operations, and records") (citing 21 U.S.C. §§ 460, 642); *see also id.* at p. 3, Finding No. 12 ("Defendant Amos Miller . . . failed to show cause why Miller's Organic Farm and he should not produce the summoned information and grant the summoned access"); *id.* at p. 4 ("Violation of this Order is punishable as a contempt of court").

27.     The Court specifically found that "Execution of the subpoena *duces tecum* by USDA will not infringe on defendants' First Amendment right to freedom of expressive association." Dkt. Entry No. 7, at p. 2, Finding No. 10.

10

28.     The United States Court of Appeals for the Third Circuit later dismissed Miller's appeal from that enforcement order. *See Amos Miller and Miller's Organic Farm v. USA*, 3d Circuit No. 16-3076, Order (Dec. 21, 2016).

29.     In mid-August 2016, the United States moved this Court to order Miller's to show cause why it should not be held in civil contempt for failing to produce certain subpoenaed sales invoices that the government believed were likely to evidence Miller's commercial sales of meat and poultry products. EDPA No. 16-cv-2732, Dkt. Entry No. 16. Miller's based its continuing refusal to produce those invoices on its status as a private membership association whose members opposed disclosing their identities and personal information.[1]

30.     At an early November 2016 show cause hearing, Miller's appeared with counsel for the first time, and the parties entered into a Consent Order. *Id.*, Dkt. Entry Nos. 25-30.

31.     The Consent Order's terms included that: (a) by late December 2016, and in order to avoid a non-compliance penalty, Miller's would complete a rolling production of redacted meat-and-poultry-related sales invoices for three calendar months of 2016; (b) within 90 days after the end of that production, FSIS could return to the farm to assess whether Miller's had cured FSIS-determined/noticed violations; and (c) within ten days following FSIS' return visit, the United States would file a case-closing report. *Id.*, Dkt. Entry No. 30.

---

[1] *See generally United States v. Allgyer*, No. 11-cv-2651, 2012 WL 355261, at *1-2, 4 & nn. 7, 11, 15 (E.D. Pa. Feb. 3, 3012) (Stengel, J.) (in granting summary judgment and permanent injunction for United States against Lancaster County farmer who organized raw milk business as private membership association and who stated that he did not own or control the association, Court reasoned that the association's "contract . . . is merely a subterfuge to create a transaction disguised as a sale[.] . . . The practical result . . . is that consumers pay money to Mr. Allgyer and receive raw milk[.] . . . As such, despite any artful language, the agreement involves the transfer of raw milk for consideration, which constitutes a sale and is lawfully regulated by the FDA").

11

**Defendants' Long-Continuing Violations, Despite FSIS Warnings**

32.     FSIS reviewed approximately 2,862 invoices (all dated between July and

September 2016) that Miller's produced, in a highly disorganized format, under the Consent

Order. By affidavit, Mr. Miller testified that, to the best of his knowledge: (a) these represented

all of Miller's relevant invoices for those months; and (b) although many invoices failed to

include purchasers' State location information, his agents and he had not redacted such

information. Based on Mr. Miller's affidavit, the government proceeded as though the

defendants had completed the ordered production. Flanagan Decl. ¶ 23; *see also* United States'

Case Closing Letter (Mar. 27, 2017), which is attached hereto as Exhibit "C," at p. 2

(summarizing chronology).

33.     From the produced invoices, FSIS found that, during the three-month period,

Miller's sold in commerce (much of it interstate): (a) approximately 9,015 pounds of red meat

food products, for $85,062.00; and (b) approximately 5,085 pounds of poultry products, for

$39,050.00. Flanagan Decl. ¶ 23.

34.     On February 10, 2017, FSIS sent Miller's a Notice of Warning, advising that

FSIS' review of Miller's business activities showed that Miller's was engaging in operations that

the Acts prohibit. Those operations included slaughtering, processing, selling in commerce, and

transporting in commerce non-federally-inspected meat, meat food products, poultry, and poultry

products. The Notice of Warning outlined the statutory requirements and violations and what

Miller's needed to do to bring its operations into compliance. Specifically, FSIS warned Miller's

that it had to: (a) apply for and obtain a Federal Grant of Inspection; (b) conduct, consistent with

exemption requirements, any operations that might qualify for an exemption from inspection

12

under the Acts and their implementing regulations (though FSIS' investigation found no

operations that would so qualify); and/or (c) pending compliance, cease any activities involving

FSIS-regulated meat and poultry products. Hambright Decl. ¶ 20; Flanagan Decl., ¶¶ 24-25;

Notice of Warning (Feb. 10, 2017), attached as Exhibit "1" to Hambright Decl.

35.    In the February 2017 Notice of Warning, FSIS emphasized:

> The Agency takes violations of the statutes and regulations very
> seriously and strictly enforces the inspection, exemption, and other
> requirements to ensure food safety and protect the public health.
> To this [end], FSIS applies its [Meat Act and Poultry Act]
> authorities . . . to control, detain, and seize meat and poultry
> products that are adulterated, misbranded, non-federally inspected,
> or not exempt from inspection. . . . FSIS also initiates enforcement
> actions and sanctions, consistent with its public health objectives,
> for continued or serious violations. In addition to warning letters to
> seek compliance, the statutes provide for criminal and civil
> sanctions, including injunctions to enforce and prevent violations,
> and criminal prosecution. . . .
>
> Compliance investigators will conduct follow-up activities at your
> facility to verify your compliance with FSIS requirements[] . . .
> [by] no later than March 23, 2017. Please be advised that FSIS
> may initiate action, including referral to the United States Attorney
> for initiation of criminal or civil proceedings, if the Agency
> determines that [you] continue to violate Agency requirements,
> despite notice and opportunity to comply. Also, please be advised
> that meat and poultry products found at the facility that are in
> violation of Agency requirements are subject to detention and
> seizure.

*See* Exhibit "1" to Hambright Decl., at p. 4.

36.    On March 16, 2017, FSIS conducted a follow-up inspection visit to Miller's.

Flanagan Decl., ¶ 26.

37.    In a late March 2017 report to the Court in the Subpoena Enforcement Action, the

United States explained that, although the action could be closed, nevertheless: (a) the subset of

13

subpoenaed records that Miller's had produced to FSIS under the Court's orders "revealed

serious statutory and regulatory violations that [Miller's], despite notice and opportunity[] . . .

failed to correct" and that may "lead to the United States seeking further federal district court

enforcement in a separate proceeding"; and (b) if Miller's were to continue to fail to correct

those violations, it faced the "risk that USDA/FSIS will detain and/or seize [Miller's] meat and

poultry products and/or . . . refer the [agency's] . . . findings of violations to the United States

Department of Justice for consideration of criminal and/or civil enforcement" that "could include

. . . a new civil action seeking injunctive relief." *See* Case Closing Letter (Mar. 27, 2017), which

is attached as Exhibit "C."

     38.     On May 24, 2017, FSIS sent Miller's a second Notice of Warning. FSIS explained

that all of the Miller's meat and poultry products that FSIS observed during the March 16, 2017

site visit lacked accurate identification as either "Not for Sale" or "USDA-inspected." These

products included: (a) "meat and meat food products and poultry products in the coolers and

freezers bearing the Miller's Organic label"; (b) hog carcasses hanging in a cooler; (c) poultry

products; and (d) meat, meat food products, and poultry products stacked floor-to-ceiling in a

new cooler/freezer. The Notice of Warning added that Mr. Miller had acknowledged, during the

site visit, that he has "continued to sell and ship these non-exempt and non-federally inspected

meat and meat food products, and poultry products to [his] customers/members in . . .

Pennsylvania and across state lines." *See* Notice of Warning (May 24, 2017), attached as Exhibit

"2" to Hambright Decl., at pp. 1-2; *see also* Hambright Decl. ¶¶ 21, 23; Flanagan Decl. ¶¶ 27-33.

     39.     The May 2017 Notice of Warning also noted that, during the March 2017 site

visit, FSIS had again advised and counseled Mr. Miller about the Acts' requirements that his

14

meat and poultry and related products be federally inspected, unless USDA-exempted from

inspection. Further, the Notice stated that, during the site visit:

> [FSIS had] expressed the importance for [Miller's] to take action to
> change [its] current operations and referred [it] to the possible
> business options open to Miller's as noted in our [February 2017]
> Notice of Warning and other information previously provided [to
> Miller's]. These options included: applying for a grant of Federal
> inspection service, [changing its business model to] conduct[]
> retail and/or custom operations under the exemption from
> inspection, ceasing any activities involving FSIS-regulated
> products, or conducting other business activities in compliance
> with applicable State and Federal laws. [Mr. Miller] acknowledged
> reading the Notice of Warning, but stated that the notice did not
> offer any solutions because [Miller's] customers/members do not
> want their products to be inspected.

Notice of Warning (May 24, 2017), at p. 2-3 (interpolations added) (also documenting how FSIS

again explained to Mr. Miller, in detail, ways for Miller's to apply for a grant of Federal

inspection or try to change its business model in an effort to qualify for an exemption).

40.    The May 2017 Notice of Warning reemphasized to Miller's that USDA/FSIS:

(a) takes violations of its statutes and regulations seriously; (b) strictly enforces the Acts'

requirements; and (c) would consider making (if Miller's violations continued) a referral to the

United States Attorney, for initiation of criminal or civil proceedings. *Id.* at p. 4.

41.    Apart from when Mr. Miller telephoned FSIS' Enforcement Operations Branch in

late June 2017 to pose several questions (which a Compliance Specialist answered), Miller's did

not meaningfully respond to either Notice of Warning. Over a year has now since passed, and

Miller's still has not further responded to FSIS or applied for a Federal Grant of Inspection. *See*

Hambright Decl., ¶¶ 23-31; Flanagan Decl., ¶¶ 30, 33-35.

15

42.     In November 2017, FSIS yet again sent its investigators to the farm to review meat-and-poultry-related facilities and records, in order to assess whether Miller's (despite its lack of response to the warning notices) was meaningfully attempting to correct the noticed violations and to come into compliance with the Acts. During that visit, Mr. Miller reiterated his view that, because Miller's is a "private membership association," it does not have to follow federal regulatory law. He further warned that if the investigators entered his facilities, which he was not permitting them to do, they would be doing so at their "own risk." The investigators then served a new administrative subpoena duces tecum on Mr. Miller that sought access to facilities and documents. Miller's has never taken steps to comply with that subpoena. *See* Flanagan Decl., ¶ 34.

43.     FSIS has thus provided Miller's with: (a) detailed written and oral warnings; (b) explanations and responses to questions; (c) offers of guidance and counsel; and (d) abundant opportunity to cure cited violations. FSIS did not provide all of that in a vacuum. Rather, Mr. Miller separately learned about the Acts' requirements and his need for compliance during the 2016-2017 Subpoena Enforcement Action in this Court.

44.     Despite this notice and passage of time, Miller's continues to violate the Acts by: (1) slaughtering and processing meat and poultry without federal inspection; and (2) offering for sale or transportation in interstate and intrastate (Pennsylvania) commerce, and commercially selling and transporting both interstate and intrastate, non-federally-inspected, misbranded meat, meat food products, poultry, and poultry products.

45.     Miller's persists in these violations not out of ignorance of the law or of ways to cure the violations but because Mr. Miller wrongly "maintains that his participation in [his]

16

private membership association[], which sell[s] [poultry and meat products] in . . . commerce, cannot be regulated by [USDA]." *United States v. Allgyer*, No. 11-cv-2651, 2012 WL 355261, at *4 (E.D. Pa. Feb. 3, 2012) (interpolations added) (rejecting such an argument, in action on behalf of FDA permanently to enjoin interstate sales of raw milk).

46.     Miller's has been using its private membership association structure not only as an attempted shield against USDA enforcement but also as a self-justification for co-opting USDA's regulatory role. On matters such as whether the benefits of Miller's meat and poultry products sufficiently outweigh their risks, and thus can and should be sold to Miller's "members," Miller's has been arrogating to itself FSIS' authority and attempting to supplant the agency.

47.     But in proscribing the conduct that Miller's refuses to cease, Congress determined that commercial sales of non-federally-inspected meat and poultry pose unacceptable risks to public health and safety. Moreover, Congress did not permit individuals and establishments such as Miller's unilaterally to opt out of or evade the Acts' mandates by: (a) self-organizing as private membership associations; (b) invoking members' interests in not complying with the Acts and in purchasing and consuming non-federally-regulated meat and poultry products; and (c) thereby effectively nullifying federal government oversight over commercial meat and poultry sales.

48.     On these matters of public health and safety on which Congress has legislated, and that are generally applicable to all similarly situated meat and poultry establishments, Miller's may not, and should not be permitted to, serve as a law unto itself.

49.     Miller's past and continuing conduct shows that, absent permanent injunctive restraints from this Court: (a) Miller's will continue to violate Meat Act and Poultry Act provisions that are the focus of this Complaint; and (b) the United States' and the public's interests will be irreparably injured.[2]

## COUNT ONE

50.     The United States incorporates by reference, as if fully stated here, Paragraphs 1 through 49 above.

51.     From July 2016 to present, despite FSIS' warnings to cease the violations, defendants Amos Miller and Miller's Organic Farm have been violating the Meat Act by slaughtering, processing, selling in commerce, offering for sale in commerce, and/or transporting in commerce non-federally-inspected meat and meat food products intended for human consumption, all in violation of 21 U.S.C. §§ 610(a) and 610(c)(2).

## COUNT TWO

52.     The United States incorporates by reference, as if fully stated here, Paragraphs 1 through 51 above.

53.     From July 2016 to present, despite FSIS' warnings to cease the violations, defendants Amos Miller and Miller's Organic Farm have been violating the Poultry Act by slaughtering, processing, selling in commerce, offering for sale in commerce, offering for

---

[2] *See, e.g., United States v. Richlyn Labs., Inc.*, 827 F. Supp. 1145, 1150 (E.D. Pa. 1992) ("because Congress has seen fit to act in a given area by enacting a statute, irreparable injury must be presumed in a statutory enforcement action"); *see also United States v. Allgyer*, No. 11-cv-2651, 2012 WL 355261, at *4 (E.D. Pa. Feb. 3, 2012), *quoting United States v. Diapulse Corp. of Am.*, 457 F.2d 25, 28 (2d Circ. 1972) ("The passage of the [Food, Drug, and Cosmetic Act] is, in a sense, an implied finding that violations will harm the public and ought, if necessary, be restrained").

transportation in commerce, and/or transporting in commerce non-federally-inspected poultry and poultry products intended for human consumption, all in violation of 21 U.S.C. §§ 458(a)(1) and 458(a)(2)(B).

## COUNT THREE

54.    The United States incorporates by reference, as if fully stated here, Paragraphs 1 through 53 above.

55.    From July 2016 to present, despite FSIS' warnings to cease the violations, defendants Amos Miller and Miller's Organic Farm have been violating the Meat Act by selling in commerce, offering for sale or transport in commerce, and/or transporting in commerce meat and meat food products that were: (a) capable of use as human food; and (b) misbranded at the time of such sale, transportation, and/or offer for sale or transportation, because the products (i) lacked accurate identification either as "Not for Sale" or as "federally inspected," and (ii) therefore contained false and misleading labeling, all in violation of 21 U.S.C. §§ 610(a) and 610(c)(1).

## COUNT FOUR

56.    The United States incorporates by reference, as if fully stated here, Paragraphs 1 through 55 above.

57.    From July 2016 to present, despite FSIS' warnings to cease the violations, defendants Amos Miller and Miller's Organic Farm have been violating the Poultry Act by selling in commerce, offering for sale or transport in commerce, and/or transporting in commerce poultry and poultry products that were: (a) capable of use as human food; and (b) misbranded at the time of such sale, transportation, and/or offer for sale or transportation, because the products

(i) lacked accurate identification either as "Not for Sale" or as "federally inspected," and (ii) therefore contained false and misleading labeling, all in violation of 21 U.S.C. §§ 458(a)(1) and 458(a)(2)(A).

## COUNT FIVE

58.     The United States incorporates by reference, as if fully stated here, Paragraphs 1 through 57 above.

59.     Defendants Amos Miller and Miller's Organic Farm continued to violate the Meat Act on November 17, 2017, by failing to allow FSIS investigators to have access to, and to review, Miller's Organic Farm's meat-related facilities and meat slaughtering, meat processing, and meat and meat food product sales records, all in violation of 21 U.S.C. § 642. These violations continue to date.

## COUNT SIX

60.     The United States incorporates by reference, as if fully stated here, Paragraphs 1 through 59 above.

61.     Defendants Amos Miller and Miller's Organic Farm continued to violate the Poultry Act on November 17, 2017, by failing to allow FSIS investigators to have access to, and to review, Miller's Organic Farm's poultry-related facilities and poultry slaughtering, poultry processing, and poultry and poultry product sales records, all in violation of 21 U.S.C. § 460(b). These violations continue to date.

20

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff United States of America respectfully requests the Court:

I.    To find that defendants Amos Miller and Miller's Organic Farm have been violating, and are likely to continue violating, the Meat Act and the Poultry Act by:

    A.    slaughtering and processing meat, meat food products, poultry, and poultry products that do not comply with the Acts;

    B.    selling in commerce, offering for sale in commerce, offering for transport in commerce, and/or transporting in commerce non-federally-inspected meat, meat food products, poultry, and poultry products intended for human consumption;

    C.    selling in commerce, offering for sale or transport in commerce, and/or transporting in commerce meat, meat food products, poultry, and poultry products that were or are capable of use as human food but were or are misbranded at the time of such sale, transportation, and/or offer for sale or transportation; and

    D.    denying FSIS investigators access to Miller's Organic Farm's: (1) meat-related and poultry-related facilities; and (2) records relating to meat and poultry slaughtering, meat and poultry processing, and sales of meat, poultry, meat food products, and poultry products.

II.     Permanently to enjoin – under the Court's authority to order injunctive relief, as
        provided in 21 U.S.C. §§ 467c and 674, and under the Court's equitable authority
        – defendants Amos Miller and Miller's Organic Farm from directly or indirectly:

        A.      selling in commerce, offering for sale or transportation in commerce,
                and/or transporting in commerce non-federally-inspected meat, meat food
                products, poultry, and poultry products that are intended for human
                consumption and that require federal inspection under the Meat Act, the
                Poultry Act, or their regulations, as currently or later amended;

        B.      selling in commerce, offering for sale or transportation in commerce,
                and/or transporting in commerce meat, meat food products, poultry, and
                poultry products that are capable of use as human food but that are
                misbranded under the Meat Act or the Poultry Act, as currently or later
                amended, because, for example, lacking accurate "federally inspected"
                product identification;

        C.      refusing to provide FSIS compliance and investigative officials Meat Act-
                required and Poultry Act-required access to Miller's Organic Farm's
                facilities and records related to the slaughtering, processing, sale, and
                transportation of meat, meat food products, poultry, and poultry products.

III.    To grant the United States such other further equitable relief as the Court may
        deem just and proper.

WILLIAM M. McSWAIN
UNITED STATES ATTORNEY


GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

Dated: April 4, 2019

GBS3408

GERALD B. SULLIVAN
Assistant United States Attorney
PA I.D. No. 57300
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106-4476
(215) 861-8786
(215) 861-8618 (fax)


**OF COUNSEL:**
Sheila H. Novak, Assistant General Counsel
Tracey Manoff, Attorney
Marketing, Regulatory, and Food Safety Programs Division
Office of the General Counsel
U.S. Department of Agriculture
14th & Independence Ave., S.W. (South Bldg.)
Washington, D.C. 20250-1400

23

## DECLARATION OF TROY HAMBRIGHT

I, Troy Hambright, under 28 U.S.C. § 1746, declare as follows:

1.      The Food Safety and Inspection Service (FSIS) is a public health agency within the United States Department of Agriculture (USDA). I have been a USDA-FSIS employee since 1998.

2.      Since 2015, I have been a "Team Lead Compliance Specialist" in FSIS' Washington, D.C.-based Office of Investigation, Enforcement and Audit, Enforcement and Litigation Division, Enforcement Operations Branch, in which I have also temporarily served as Acting Branch Chief.

3.      I submit this declaration to support the United States' April 2019 civil Complaint for permanent injunctive relief in the United States District Court for the Eastern District of Pennsylvania. In its Complaint, the United States, at USDA's and FSIS' request, seeks to require Amos Miller and Miller's Organic Farm (collectively, "Miller's"): (1) to cease endangering the public health and safety, including by commercially selling misbranded and non-federally-inspected meat food and poultry products; and (2) to comply with the Federal Meat Inspection Act, 21 U.S.C. § 601, et seq. (the "Meat Act" or "FMIA"), the Poultry Products Inspection Act, 21 U.S.C. § 451, et seq. (the "Poultry Act" or "PPIA"), and related regulations.

4.      I base this declaration on: (a) my personal knowledge; (b) information that I received orally or in writing during the course of FSIS' investigation and review of Miller's, which began in 2016; and (c) my experience (and facts learned) as a Team Lead Compliance Specialist and Acting Branch Chief.

5.      In my Team Lead position, I manage criminal, civil, and administrative cases that FSIS' Office of Field Operations and FSIS' Compliance Investigative Division refer to my Branch for enforcement.

6.      In the course of my duties, as an FSIS Team Lead representative of the Secretary of Agriculture, and in frequent consultation with USDA's Office of General Counsel, I routinely apply (and help enforce) the FMIA, the PPIA, the Egg Products Inspection Act (EPIA), the Humane Methods of Slaughter Act (HMSA), and their implementing regulations. I have received training on subject areas that include federal administrative law as well as the statutory and regulatory framework under which FSIS carries out its public health mission.

7.      For businesses whose activities involve FSIS-regulated products, I, as Team Lead: (a) review violations reports, administrative reports, investigatory materials, and case evidence to evaluate alleged violations of the FMIA, the PPIA, the EPIA, and the HMSA; and (b) routinely provide technical compliance guidance, including on how properly to prepare, store, transport, and sell (or offer for sale or transport) meat food, poultry, and egg products, and on how to comply with federal inspection (and exemption from inspection) requirements. When businesses are unwilling or unable to comply with these laws, my FSIS Branch and I turn to USDA's Office of General Counsel for legal assistance, including, as appropriate, in seeking possible civil, administrative, or criminal sanctions.

8.      In 7 C.F.R. §§ 2.53(a)(2)(i)-(iii), the Secretary of Agriculture delegated to FSIS the authority to administer and enforce the FMIA, the PPIA, and the EPIA. Congress enacted these laws to ensure that meat, poultry, and egg products that are intended for human consumption – and that are sold, transported, or distributed in interstate commerce or even in

2

wholly intrastate commerce in certain States like the Commonwealth of Pennsylvania – are safe, wholesome, not adulterated, and correctly marked, labeled, and packaged.

9.    The FMIA and the PPIA require FSIS to conduct daily monitoring and inspection activities at facilities that slaughter livestock or poultry and that process meat food or poultry products for sale or distribution in commerce. FSIS monitors and inspects products to ensure a sanitary production environment in which potential food safety hazards are identified and eliminated. Once meat and poultry products are USDA-inspected and USDA-passed by FSIS, they are labeled with the official USDA mark of inspection and can be sold in commerce.

10.   Facilities that are subject to daily federal inspection must first seek a "Federal Grant of Inspection" by contacting the FSIS Office of Field Operations (OFO) and completing an application. If the OFO decides that the establishment should be subject to federal inspection, OFO will issue a conditional, temporary grant of inspection. To obtain a final grant of inspection, the establishment will need to demonstrate its ability to meet regulatory requirements that include implementing, maintaining, and following: (a) Sanitation Standard Operating Procedures; (b) a Hazardous Analysis and Critical Control Point plan; (c) recordkeeping procedures; and (d) monitoring procedures.

11.   FSIS is aware of Pennsylvania-based meat and poultry businesses (including establishments that appear to be Amish-owned or Mennonite-owned) that: (a) are similar to Miller's; and (b) operate under USDA/FSIS regulation.

12.   The FMIA and PPIA provide the possibility of limited exemptions from daily inspection requirements for certain operations, including operations involving: (a) traditional and usual retail and restaurant sales; (b) the slaughtering and preparing of livestock for personal use; and (c) "custom" slaughtering and preparing of livestock, carcasses, parts, and meat food and

3

poultry products for certain non-paying family members, household members, guests, employees, and/or neighbors. *See* 21 U.S.C. §§ 454, 464, 623, 661. An establishment must conduct even these limited exempted operations in strict compliance with statutory and regulatory requirements. These requirements ensure, among other things, that articles that are exempted from daily inspection or not required to be inspected each day are not adulterated or misbranded. *See* 21 U.S.C. §§ 464, 623; 9 C.F.R. §§ 303.1, 381.10, 416.1-416.6.

13.     A "custom-exempt" facility is one that is exempt from federal (daily) inspection requirements if it slaughters livestock or poultry that the livestock's or poultry's owner delivers to the facility – and/or if the facility processes the carcasses and parts into meat food and poultry products – exclusively for use in the livestock/poultry owner's household, by the owner, the owner's household members, and/or the owner's nonpaying guests and employees. But even for, and at, a "custom-exempt" facility:

a.     all articles that the facility prepares on a custom basis, and all containers or packages containing those articles, must be: (i) plainly marked "Not for Sale" immediately after being prepared (*see* 9 C.F.R. § 317.16); and (ii) kept so identified until delivered to the owner;

b.     operators are required to keep records (in addition to the records required generally for FMIA and PPIA compliance) showing the numbers and kinds of livestock and poultry slaughtered on a custom basis, the quantities and types of products prepared, and the names and addresses of the owners of livestock, poultry, and products; and

c.     operations must be maintained and conducted in accordance with the FMIA's and the PPIA's sanitation and facility standards, and must meet other requirements – addressing, for example, facility maintenance and grounds; pest control; inedible material

4

control; pathogen control; water potability; sewage and waste disposal; cleanliness of equipment and utensils; and hygiene – to ensure that custom-prepared products are not adulterated. *See* 9 C.F.R. §§ 303.1, 381.10, 416.1-416.6.

14.     "Custom-exempt" operators do not sell meat or poultry products. Rather, "custom-exempt" operators merely provide a slaughter service for owners of livestock and poultry.

15.     FSIS does not consider a facility and its operations to be "custom-exempt" merely because the facility labels its meat and poultry products as "not for sale." To the contrary, regardless of product labeling, the facility/operator is not "custom-exempt" once it offers its meat food or poultry products for sale in commerce, even if the facility sells those products only to members of its "private membership organization." At that point, the products' intended use becomes commercial, the products' "not for sale" labeling becomes false and misleading, and the commercial seller (even if a self-styled member of a private membership association) has misbranded the products. *See, e.g.*, 21 U.S.C. § 453 (defining "misbranding" of poultry products to include "(1) labeling that is false or misleading in any particular," or "(2) if it fails to bear on its containers . . . the official inspection legend . . . of the establishment where the article was processed, and . . . such other information . . . as the Secretary may require . . . to assure that it will not have false or misleading labeling"); 21 U.S.C. § 601 (similar definition of "misbranding" for meat food products); 21 U.S.C. § 458(a)(2) and (3) (prohibiting the sale, transport, or offer for sale or transport in commerce of misbranded poultry products and the doing of "any act while they are being transported in commerce or held for sale after transportation, which is intended to cause or has the effect of causing such products to be . . . misbranded"); 21 U.S.C. § 610(c) and (d) (similar prohibition regarding meat food products); 9

C.F.R. § 301.2 (term "misbranding" applies to meat food products with labeling that "is false or misleading in any particular"); 9 C.F.R. § 381.1 (same as to poultry products).

16.     In addition to their exemptions for "custom" slaughter, the FMIA and PPIA contain exemptions for certain retail operations. These exemptions are limited, however, and include specific requirements for the processing, labeling, and packaging of products. Before meat food and poultry products can be offered for retail sale, they must be federally (USDA/FSIS) inspected.

17.     Certain facilities are subject to periodic FSIS inspection and records inquiries and reviews that are known "verification reviews." These include all facilities that: (a) are not under active federal inspection (either because they are exempt or because FSIS has not yet determined whether they require federal inspection); (b) slaughter livestock or poultry, or process meat food or poultry products; or (c) store, or distribute in commerce, meat food or poultry products. FSIS conducts these reviews to ensure that facilities are complying with the FMIA, the PPIA, and the regulations described above that relate to sanitation, recordkeeping, labeling, custom exemption, retail exemption, and other requirements. *See* 21 U.S.C. § 642 (facilities must, "upon notice by a duly authorized representative of the Secretary, afford such representative access to their places of business and opportunity to examine the facilities, inventory, and records thereof"); 9 C.F.R. § 320.4. Verification reviews may: (a) involve FSIS veterinarians, consumer safety officers, investigators, and other program employees; and (b) include an examination of sanitation and facilities; product inventory; water supply; sewage and waste disposal; pest control; inedible material control; marking and labeling; recordkeeping; and compliance with custom exemption requirements.

6

18.     When an FSIS verification review shows that a facility is not operating in accordance with the Acts, FSIS, under its FMIA and PPIA authority, may: (a) seize and detain adulterated and misbranded product, 21 U.S.C. §§ 467A, 672; and (b) withdraw any custom-exempt privilege from an owner or operator that demonstrates the inability or unwillingness to operate in accordance with the Acts and FSIS' regulations. 21 U.S.C. §§ 464(f), 623.

19.     In May 2016, I spoke with Amos Miller by telephone. We discussed that FSIS had visited his farm to determine whether: (a) his meat, meat food products, poultry, and poultry products were being federally inspected; and (b) he was conducting a retail and/or custom slaughter operation. I explained to him FSIS' statutory rights to access and to examine Miller's meat-related and poultry-related facilities and records. When Mr. Miller protested that Miller's is a private rather than a public organization, I explained that his characterization of Miller's business did not affect FSIS' jurisdiction or authority to review his meat-related and poultry-related business for compliance with the FMIA and PPIA. I stressed that, without FSIS having access to Miller's meat-related and poultry-related facilities and records, and being able to determine the nature of Miller's operations, FSIS was being hindered from assessing Miller's compliance with (and from being able to counsel Miller's in a fully informed way about how to comply with) the FMIA and PPIA.

20.     Approximately nine months later, on February 10, 2017, my FSIS office sent Miller's a Notice of Warning stating that FSIS' review of Miller's business activities and records showed that Miller's was engaging in operations that the FMIA and PPIA prohibit. Those operations included slaughtering, processing, selling in commerce, and transporting in commerce non-federally-inspected meat, meat food products, poultry, and poultry products. The Notice of Warning outlined the statutory requirements and violations and what Miller's needed to do to

7

bring its operations into compliance. Specifically, we told Miller's that it had to: (a) apply for and obtain a Grant of Federal Inspection; (b) conduct, consistent with exemption requirements, any retail and/or custom meat/poultry operations that might qualify for an exemption from inspection under the FMIA, PPIA, and their implementing regulations (though none of Miller's observed operations appeared to so qualify); and/or (c) pending compliance, cease any activities involving FSIS-regulated meat and poultry products. *See* Notice of Warning (Feb. 10, 2017), Exhibit "1" hereto.

21.     Three months later, on May 24, 2017, my office sent Miller's a second Notice of Warning, advising that, during a March 16, 2017 farm visit, FSIS had found and/or observed, among other things, that the following products lacked required, accurate identification as either "Not for Sale" or "USDA-inspected": (a) "meat and meat food products and poultry products in the coolers and freezers bearing the Miller's Organic label"; (b) hog carcasses hanging in a cooler; (c) poultry products; and (d) meat, meat food products, and poultry products stacked floor-to-ceiling in a new cooler/freezer. That Notice added that, during the March 2017 site visit, Mr. Miller "acknowledged that [he has] continued to sell and ship these non-exempt and non-federally inspected meat and meat food products, and poultry products to [his] customers/members in . . . Pennsylvania and across state lines." *See* Notice of Warning (May 24, 2017), attached as Exhibit "2" hereto.

22.     At my request, FSIS' Philadelphia District Office, on two occasions (in March 2017 and then again on June 27, 2017), sent Mr. Miller a package of information that: (a) explained the process for applying for a USDA-FSIS Federal Grant of Inspection; and (b) contained copies of the FMIA, the PPIA, applicable regulations, application forms, and a list

8

of FSIS employees who could be called for assistance. FSIS sent the second package to Mr. Miller because, on June 27, 2017, he called me to request that FSIS re-send the documents.

23.     On June 28, 2017, I had another phone discussion with Mr. Miller, in follow-up to a voice message he had left for me. I explained that: (a) on May 24, 2017, my office had sent him the Notice of Warning of that date, by both regular mail and certified mail, but that the certified copy had been lost in the mail;[1] (b) the May 2017 Notice of Warning was similar to the February 2017 Notice of Warning and contained information about FSIS' March 2017 site visit, ways Miller's could be brought into compliance, and agency contacts; (c) my office had attempted to send a second certified copy of the May 2017 Notice of Warning to Miller's on June 24, 2017, but that copy was returned to my office with "refused" written across the envelope; and (d) I was available to answer any questions Mr. Miller might have about the May 2017 Notice of Warning that we had mailed to him a third time, on June 27, 2017, or the Federal Grant of Inspection application papers.

24.     During the June 28, 2017 call, I also answered Mr. Miller's question about whether, if he were to come under federal inspection, the Commonwealth of Pennsylvania could inspect his facility. (He stated a worry that the Commonwealth would seek to inspect his milk, cheese, or meat operations.) I responded that: (a) I could not speak for the Commonwealth, which (unlike FSIS) does not have a meat inspection program; and (b) FSIS regulates only meat, poultry, and eggs, not milk or cheese (FDA is the federal agency that regulates milk and cheese).

---

[1] U.S. Postal Service tracking information showed that, on May 27, 2017, the letter was in transit to Mr. Miller. On June 22, 2017, tracking information was still showing the letter as being "in transit to destination." I therefore called the Postal Service's 1-800 number on that date to inquire why. A Postal Service representative responded that: (a) something had likely happened to the letter; and (b) the Postal Service would investigate the delivery status. On June 23, 2017, a Harrisburg, Pennsylvania-based Postal Service representative called me to state that: (a) the certified letter had been lost; and (b) no further information was available.

9

When Mr. Miller asked me if I would contact Pennsylvania's Agriculture Department to inquire whether it would inspect his milk and cheese operations even if his meat and poultry were federally inspected, and to find out the Commonwealth's requirements, I suggested that he contact the Commonwealth directly with his questions, because I could knowledgeably share only FSIS requirements.

25.      During the June 28, 2017 call, Mr. Miller expressed concern about the cost of Miller's coming under federal inspection. I explained that: (a) there was no cost to apply for and receive a grant of inspection; (b) there would be ongoing facility and regulatory requirements (including relating to sanitation and recordkeeping) that he would have to meet if he obtained a grant of inspection; and (c) those requirements might have some associated costs.

26.      During our June 28, 2017 call, Mr. Miller asked whether, if he slaughters only one or two bulls/cows and one pig a week, Miller's would be too small an operation to warrant federal inspection. I responded that, if Miller's slaughters livestock and sells its meat and poultry, it must do so under federal inspection, regardless of the size of its operation, and that only inspected meat and poultry can be sold to Miller's customers.

27.      Further, during the call, Mr. Miller asked a variety of questions concerning food safety programs, humane handling of livestock, and general requirements if his facility were to undergo federal inspection. I answered his questions to the best of my ability and informed him that he could work with the Office of Field Operations' Philadelphia District Office during the application process for a grant of inspection.

28.      During that call, I also discussed the "custom slaughtering and preparation exemption" under the FMIA, including that: (a) the custom exemption applies to a business or person who slaughters and prepares livestock, and/or prepares game animals, belonging to

10

someone else, for the personal use of the owner of those livestock/animals; (b) under 21 U.S.C. § 623(a) and 9 C.F.R. § 303.1(a)(2)-(4), custom operators must comply with all provisions of the FMIA, unless otherwise excepted; (c) although custom-exempt meat firms are exempt from carcass-by-carcass inspection and the presence of inspectors during operations, they are subject to FSIS review for sanitary conditions; and (d) custom product *may not be sold* or donated.

29.     Finally, during the June 28, 2017 call, I stressed that FSIS wants Miller's to be a successful operation and that it was unfortunate that Mr. Miller had operated for such a long time while purporting not to know the federal requirements. I added that establishments of Miller's size are able to operate successfully under FSIS inspection, and FSIS remained willing to answer Mr. Miller's questions and to assist him but, at the same time, Miller's cannot continue to sell uninspected meat and poultry to its customers in Pennsylvania and other states.

30.     I memorialized some of my June 28, 2017 telephone discussion with Mr. Miller in a letter that I mailed to Mr. Miller on July 26, 2017. *See* Exhibit "3" hereto (July 26, 2017 letter).

31.     As of today's date, Mr. Miller still has not applied for federal inspection or stated to FSIS an intention to do so. He has not called or contacted me (or, to my knowledge, any of my FSIS colleagues) since June 2017. My understanding is that Mr. Miller's last interaction with FSIS was over a year ago, in mid-November 2017, when he refused to permit FSIS investigators access to his facilities and records.

32.     Since the time of our last interaction, FSIS has continued to monitor Miller's Organic Farm's internet presence, and believes that Miller's continues to sell non-federally-inspected, misbranded meat food and poultry products in commerce.

11

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge.

Executed on this ___1___ day of April, 2019.


Troy Hambright
Team Lead Compliance Specialist
Enforcement Operations Branch
Enforcement and Litigation Division
Office of Investigation, Enforcement and Audit
Food Safety and Inspection Service
U.S. Department of Agriculture



**United States Department of Agriculture**

Sent by Certified Mail

February 10, 2017

Mr. Amos Miller
Miller's Organic Farm
648 Millcreek School Road
Bird-in-Hand, Pennsylvania 17505



NOTICE OF WARNING

Dear Mr. Miller:

Our office, the Enforcement and Litigation Division (ELD), within the U.S. Department of Agriculture (USDA), Food Safety and Inspection Service (FSIS), has received a report showing that you, doing business as Miller's Organic Farm (Miller's), are engaged in operations in violation of the Federal Meat Inspection Act (FMIA) (21 U.S.C. §§ 601 et. seq.) and/or the Poultry Products Inspection Act (PPIA) (21 U.S.C. §§ 458 et. seq.). This determination is based on a review of your business activities and business and sales records, which show that you are engaged in the slaughter, processing, sale and transportation of uninspected meat and poultry products in violation of Federal law (21 U.S.C. §§ 610, 458).

This Notice of Warning provides you with information on the documented violations, the relevant statutory and regulatory requirements, and the enforcement actions that the Agency may take for future violations. This written notice also provides you with information on the actions Miller's can take to bring its food operations into compliance with the FMIA and the PPIA.

### Statutory and Regulatory Requirements

The Food Safety and Inspection Service (FSIS) is the public health agency in the U.S. Department of Agriculture (USDA) responsible for ensuring that meat, poultry, and egg products are safe, wholesome, and correctly labeled and packaged. It is the mission of FSIS to protect the consuming public from meat, poultry, and egg products that are adulterated, misbranded, or otherwise in violation of the law and to take action to protect the public health.

FSIS enforces, among other laws, the FMIA (21 U.S.C. §§ 601 et. seq.), the PPIA (21 U.S.C. §§ 451 et seq.), and the regulations issued under these statues. These laws generally require Federal inspection for the slaughter of livestock and poultry and for the preparation of meat and poultry products for sale and distribution in interstate commerce. 9 C.F.R. 302.1 and 381.6 require inspection of every establishment slaughtering meat or poultry, or preparing meat or poultry products for human consumption, unless specifically exempted by 9 C.F.R. 303.1 and/or 381.10.

Food Safety and Inspection Service
Office of Investigation, Enforcement and Audit
Enforcement and Litigation Division
Stop Code 3753, PP3, Cubicle 8-235A
1400 Independence Avenue, SW
Washington, D.C. 20250
Voice: (202) 418-8872 Fax: (202) 245-5097

An Equal Opportunity Provider and Employer

These requirements also apply to transactions wholly within the designated state of Pennsylvania (21 U.S.C. §§ 661(c)(1) and 454(c)(1)).

The FMIA, PPIA, and regulations do provide limited exemptions from inspection requirements for certain operations, such as for traditional and usual retail operations, and for the custom slaughter and preparation of livestock, carcasses, parts, and meat and poultry products. However, these exemptions are limited and must be conducted in compliance with statutory and regulatory requirements. Firms operating under an exemption must ensure that products prepared, sold, and distributed are not adulterated or misbranded and must comply with other specific requirements, dependent on the exemption, such as those related to the amount and type of products that may be sold, limitations regarding the sale of products directly to consumers, and requirements for sanitation standards, recordkeeping, product packaging, and labeling. *See*, 21 U.S.C. §§ 454, 623, 661; 9 C.F.R. 303.1, 381.10, and 416.1 through 416.6.

### *Prior Regulatory Activities and Enforcement Actions*

As you know, FSIS initiated an inquiry in March 2016 to determine whether Miller's was operating in compliance with FSIS statutes and regulations. That inquiry included, pursuant to FSIS laws, reviewing your facility, operations, and records related to your food transactions. After seeking voluntary compliance, execution of our responsibilities proceeded to enforcement proceedings, initiated through the United States Attorney's Office, Eastern District of Pennsylvania, to enforce our authority to examine your facility and operations, and obtain and review business records.

### *Investigative Findings*

Our investigation shows that Miller's is engaged in the slaughter, preparation, sale, and transport of uninspected meat and poultry products to various retail customers in interstate and intrastate commerce. Specifically, FSIS found coolers; freezers; the smokehouse; and equipment, such as assorted knifes, air compressor, electric band saw, hand meat saw, meat clever, meat hooks, cutting boards, stainless steel tables, packaging equipment and labeling equipment, and other tools that are used by individuals in the conduct of slaughtering and processing operations. Agency officials also observed and photographed non-federally inspected meat and poultry products bearing the Miller's Organic Farms label. Investigators obtained information showing that non-exempt meat and poultry products were non-federally inspected and sold to various retail customers. In addition, investigators found that Miller's also sold and shipped non-federally inspected products to other retail customers across state lines. Sale, transportation, and offering for sale or transportation, of non-exempt meat and poultry for human consumption is prohibited by federal law under the FMIA, 21 U.S.C. § 610, and PPIA, 21 U.S.C. § 458.

### *Compliance Information*

Miller's needs to take action to bring its food operations into compliance with FSIS laws and regulations. To achieve compliance, Miller's may apply for and obtain a grant of Federal inspection service, conduct retail and/or custom operations under the exemptions from inspection

2

as provided in the statutes and regulations, and/or cease any activities involving FSIS-regulated products.

## *Federal Inspection*

You could choose to apply for operations under Federal inspection. Federal establishments may slaughter, prepare, process, and sell meat and/or poultry products for distribution. Federal establishments must demonstrate the ability to meet certain requirements for producing safe, wholesome, and properly labeled products. These requirements, among others, include meeting sanitation, facility, and operational standards and having required food safety programs, including Hazard Analysis and Critical Control Points, Recall and Sanitation Standard Operating Procedures in place that ensure that production of safe, unadulterated and properly labeled meat and poultry products. *See*, 21 U.S.C. §§ 456, 458, 608, and 621; 9 C.F.R. Parts 416, 417 and 418. FSIS inspection officials inspect, verify, and enforce FSIS sanitation and other requirements at establishments that operate under a grant of Federal inspection.

For information on how to apply for a grant of inspection, you may contact the Office of Field Operations, Philadelphia District Office at (215) 597-4219. You may also access the FSIS website at http://www.fsis.usda.gov/.

## *Exemptions*

As previously mentioned above, the FMIA, PPIA and associated regulations allow for a number of exemptions from continuous meat and poultry inspection. Regulations regarding exemptions for meat and meat products are contained at 9 C.F.R. Part 303; and 9 C.F.R. 381.10 for poultry and poultry products. Perhaps your farm could operate under one or more of these exemptions, such as the custom or retail exemptions explained below. Meat products that are not specifically prepared in compliance with an exemption are required to be inspected (9 CFR 302.1).

## *Custom*

Custom slaughter and processing operations are required to meet certain statutory and regulatory requirements to ensure that livestock and poultry are slaughtered and prepared under sanitary conditions and that carcasses and products are not adulterated or misbranded. The FMIA specifies that custom exempt products must be labeled "Not for Sale," are for the exclusive use of the owner of the livestock, and are not eligible for sale. 9 C.F.R. 303.1(b)(3) requires that the custom operator keep specific records, in addition to records required by Part 320, including a record of all livestock slaughtered, the products prepared from those livestock, and the names and addresses of the owners of the livestock and products. The PPIA contains similar provisions for poultry and poultry products. *See*, 21 U.S.C. §§ 623, and 464; 9 C.F.R. Parts 303.1, 381.10, 381.175, and 416.1-416.6.

## *Retail Exemption*

You may choose to conduct retail operations. Retail operations are subject to various requirements, such as those related to the amount and types of products that may be sold, certain

3

limitations regarding the sale of products directly to consumers, and recordkeeping, product packaging, and labeling. Firms operating under the retail exemption also must maintain sanitary conditions and ensure that products prepared, sold, and distributed are not adulterated or misbranded.

Moreover, preparation of product under the retail exemption in the designated state of Pennsylvania is restricted to meat derived from federally inspected and passed meat and meat food product; and poultry and poultry derived from only federally inspected and passed, or exempted poultry. *See*, 21 U.S.C. §§ 454 and 661, and CFR Parts 303.1(d) and 381.10. Retail operations are also subject to applicable Pennsylvania State laws.

For more information regarding retail exempt operations, you may contact the Compliance and Investigations Division, Northeast Region at (215) 430-6222.

### Non-FSIS Regulated Products

You may choose to engage in business that does not involve meat or poultry products. This could include operations related to receiving, storing, and preparing non-amenable species, such as deer or other game animals. Non-amenable processing operations are not subject to FSIS statutory and regulatory requirements. However, such operations are subject to regulation by other Federal or State entities.

### Enforcement Activities

The Agency takes violations of the statutes and regulations very seriously and strictly enforces the inspection, exemption, and other requirements to ensure food safety and protect the public health. To this effect, FSIS applies its authorities under the FMIA and the PPIA to control, detain, and seize meat and poultry products that are adulterated, misbranded, non-federally inspected, or not exempt from inspection (21 U.S.C. §§ 467a, 672). FSIS also initiates enforcement actions and sanctions, consistent with its public health objectives, for continued or serious violations. In addition to warning letters to seek compliance, the statutes provide for criminal and civil sanctions, including injunctions to enforce and prevent violations, and criminal prosecution. *See,* 21 U.S.C. §§ 458, 461, 467c, 610, 674, and 676.

### Follow-Up Activities

Compliance investigators will conduct follow-up activities at your facility to verify your compliance with FSIS requirements. Pursuant to the U.S. District Court's order, FSIS will conduct this follow-up activity no later than March 23, 2017. Please be advised that FSIS may initiate action, including referral to the United States Attorney for initiation of criminal or civil proceedings, if the Agency determines that Millers continues to violate Agency requirements, despite notice and opportunity to comply. Also, please be advised that meat and poultry products found at the facility that are in violation of Agency requirements are subject to detention and seizure.

4

You are expected to voluntarily comply with all requirements of the FMIA and PPIA. Please do not hesitate to contact Mr. Troy Hambright, Lead Compliance Specialist, at (202) 418-8890, if you have any questions regarding this letter, the law, or available compliance options. In addition, you may contact the FSIS Small Plant Help Desk, at 1-877-374-7435 or infosource@fsis.usda.gov, for additional regulatory information, technical assistance, and guidance on how to operate in compliance with the FSIS laws and regulations.

Sincerely,

Scott C. Safian, Director
Enforcement and Litigation Division
Office of Investigation, Enforcement and Audit

 **United States Department of Agriculture**



Sent by Certified and by U.S.P.S. Mail

May 24, 2017

Mr. Amos Miller
Miller's Organic Farm
648 Millcreek School Road
Bird-in-Hand, Pennsylvania 17505

NOTICE OF WARNING

Dear Mr. Miller:

On March 16, 2017, pursuant to an order of the U.S. District Court, investigators with the Food Safety and Inspection Service (FSIS) visited your facility to evaluate your compliance with Agency laws and regulations. Prior to this evaluation, FSIS advised you, in a written Notice of Warning, dated, February 10, 2017, that your business, Miller's Organic Farm (Miller's), was engaged in operations in violation of the Federal Meat Inspection Act (FMIA) (21 U.S.C. §§ 601 et. seq.), the Poultry Products Inspection Act (PPIA) (21 U.S.C. §§ 458 et. seq.), and regulations 9 C.F.R. 302.1, 303.1 and 381.6, 381.10 issued under these laws, and provided you an opportunity to come into compliance. Despite this notice and opportunity, the March 16, 2017, review of your facility, operations, and records found continued violations.

Accordingly, this Notice of Warning provides you with information regarding the Agency's March 16, 2017, findings, why Miller's operations are in violation of FSIS requirements, the actions Miller's can take to come into compliance, and Agency resources available to assist you in this process. This Notice of Warning also provides information on enforcement actions available to FSIS should Miller's continue to violate FSIS laws and regulations.

Findings from March 16, 2017

On March 16, 2017, the FSIS agency officials met with you and conducted a follow-up review of Miller's facility, operations, and records to determine if Miller's had made any changes to its operations to correct the non-compliance items previously discussed with you and identified in our February 10, 2017, Notice of Warning.

During the review, Agency officials again observed and photographed non-federally inspected meat and meat food products and poultry products in the coolers and freezers bearing the Miller's Organic label. FSIS also observed several hog carcasses hanging in the cooler. None of the meat and meat food products were identified "Not for Sale" or bore federal marks of inspection. None of the poultry products bore marks of federal inspection or any other specific labeling information. Agency officials also observed a new cooler/freezer recently installed. This freezer contained an indeterminate amount of meat, meat food products and poultry products in boxes stacked on wooden pallets from floor to ceiling. None of those meat and meat food products was marked "Not for Sale" or bore federal marks of inspection. None of the poultry products bore marks of federal inspection or any other specific labeling information. When Agency officials asked you questions about these products during the review, you acknowledged that you

Food Safety and Inspection Service
Office of Investigation, Enforcement and Audit
Enforcement and Litigation Division
Stop Code 3753, PP3, Cubicle 8-235A
1400 Independence Avenue, SW
Washington, D.C. 20250
Voice: (202) 418-8872 Fax: (202) 245-5097

An Equal Opportunity Provider and Employer

have continued to sell and ship these non-exempt and non-federally inspected meat and meat food products, and poultry products to your customers/members in the designated state of Pennsylvania and across state lines. These observations and the information you shared clearly shows you have not changed your business practices and continue to slaughter, process, offer for sale and transportation, transport and sell meat and meat food products, and poultry products in commerce that have not been inspected and passed by USDA or otherwise slaughtered and prepared in accordance with any of the exemptions afforded by the FMIA or PPIA.

Agency officials again discussed with you that the sale, transportation, and offering for sale meat and meat food products, and poultry or poultry products, for human consumption which are required to be inspected unless exempted from the inspection requirements in commerce is prohibited by federal law under the Federal Meat Inspection Act (FMIA), 21 U.S.C. §610, and the Poultry Products Inspection Act (PPIA), 21 U.S.C. §458. Agency officials expressed the importance for you to take action to change your current operations and referred you to the possible business options open to Miller's as noted in our Notice of Warning and other information previously provided you. These options included: applying for a grant of Federal Inspection service, conducting retail and/or custom operations under the exemptions from inspection, ceasing any activities involving FSIS-regulated products, or conducting other business activities in compliance with applicable State and Federal laws. You acknowledged reading the Notice of Warning, but stated that the notice did not offer any solutions because your customers/members do not want their products to be inspected.

At the conclusion of the review, agency officials met with you and your staff to answer additional questions to assist you in achieving compliance going forward. A group of approximately 15 employees gathered in the office area and agency officials asked if anyone had any questions and if there was something you or your employees did not understand. FSIS officials were happy to again provide clarification and/or answer any questions. Several questions were asked related to custom slaughter, federal inspection and retail sales, and one employee asked if he could get information on what could be done to obtain compliance. Agency officials provided the employee with a copy of the Notice of Warning, and told you and the employee that upon return to their office, they would contact the Philadelphia District Office and ask that office to provide you with a packet of information on applying for a grant of Federal inspection service. Subsequently, the Philadelphia District Office was contacted, and on or about March 17, 2017, that office provided you a packet of information for applying for a grant of Federal inspection service. This packet also included the Philadelphia District's contact information.

#### Federal Inspection Services

As we have previously advised, you could choose to apply for operations under Federal inspection. Once issued a grant of Federal inspection, establishments may slaughter, prepare, process, and sell meat and/or poultry products for distribution. Federally inspected establishments must demonstrate the ability to meet certain requirements for producing safe, wholesome, and properly labeled products. These requirements, among others, include meeting sanitation, facility, and operational standards and having required food safety programs, including Hazard Analysis and Critical Control Points, Recall and Sanitation Standard Operating Procedures in place that ensure the production of safe, unadulterated and properly labeled meat and poultry products. *See*, 21 U.S.C. §§ 456, 458, 608, and 621; 9 C.F.R. Parts 416, 417 and 418. FSIS inspection officials inspect, verify, and enforce FSIS sanitation and other requirements at establishments that operate under a grant of Federal inspection.

For information on how to apply for a grant of inspection, you may contact the Office of Field Operations, Philadelphia District Office at (215) 597-4219. You may also access the FSIS website at http://www.fsis.usda.gov/

2

### Exemptions

As mentioned in prior correspondence and discussions with you, the FMIA, PPIA and associated regulations allow for a number of exemptions from continuous meat and poultry inspection. Regulations regarding exemptions for meat and meat products are contained at 9 C.F.R. Part 303; and 9 C.F.R. 381.10 for poultry and poultry products. To achieve compliance, you could assess and determine if Miller's could operate under one or more of these exemptions, such as the custom or retail exemptions explained below. Meat and poultry products that are not specifically prepared in compliance with an exemption are required to be inspected (9 CFR 302.1, 381.6).

### Custom

Custom slaughter and processing operations are required to meet certain statutory and regulatory requirements to ensure that livestock and poultry are slaughtered and prepared under sanitary conditions and that carcasses and products are not adulterated or misbranded. The FMIA specifies that custom exempt products must be labeled "Not for Sale," are for the exclusive use of the owner, of the livestock, and members of his or her household, and are not eligible for sale. 9 C.F.R. 303.1(b)(3) requires that the custom operator keep specific records, in addition to records required by Part 320, including a record of all livestock slaughtered, the products prepared from those livestock, and the names and addresses of the owners of the livestock and products. The PPIA contains the exemption provisions for poultry and poultry products. *See*, 21 U.S.C. §§ 623, and 464; 9 C.F.R. Parts 303.1, 381.10, 381.175, and 416.1-416.6.

### Retail Exemption

You may choose to conduct retail operations. Retail operations are subject to various requirements, such as those related to the amount and types of products that may be sold, certain limitations regarding the sale of products directly to consumers, and recordkeeping, product packaging, and labeling. Firms operating under the retail exemption also must maintain sanitary conditions and ensure that products prepared, sold, and distributed are not adulterated or misbranded.

Moreover, preparation of product under the retail exemption in the designated state of Pennsylvania is restricted to meat derived from federally inspected and passed meat and meat food product; and poultry and poultry derived from only federally inspected and passed, or exempted poultry. *See*, 21 U.S.C. §§ 454 and 661, and CFR Parts 303.1(d) and 381.10. Retail operations are also subject to applicable Pennsylvania State laws.

For more information regarding retail or custom exempt operations, you may contact the Compliance and Investigations Division, Northeast Region at (215) 430-6222.

### Non-FSIS Regulated Products

You may choose to engage in a business that does not involve meat or poultry products. This could include operations related to receiving, storing, and preparing non-amenable species, such as deer or other game animals. Non-amenable processing operations are not subject to FSIS statutory and regulatory requirements. However, such operations are subject to regulation by other Federal or State entities.

### Enforcement Activities

The Agency takes violations of the statutes and regulations very seriously and strictly enforces the inspection, exemption, and other requirements to ensure food safety and protect the public health. To this effect, FSIS applies its authorities under the FMIA and the PPIA to control, detain, and seize meat and

3

poultry products that are adulterated, misbranded, non-federally inspected, or not exempt from inspection (21 U.S.C. §§ 467a, 672). FSIS also initiates enforcement actions and sanctions, consistent with its public health objectives, for continued or serious violations. In addition to warning letters to seek compliance, the statutes provide for criminal and civil sanctions, including injunctions to enforce and prevent violations, and criminal prosecution. *See,* 21 U.S.C. §§ 458, 461, 467c, 610, 674, and 676.

### *Follow-Up Activities*

Compliance investigators will conduct future follow-up activities at Miller's to verify your compliance with FSIS requirements. Please be advised that FSIS may initiate action, including referral to the United States Attorney for initiation of criminal or civil proceedings, if the Agency determines that Miller's continues to violate Agency requirements, despite notice and opportunity to comply. Also, please be advised that meat and poultry products found at the facility, or elsewhere in commerce that are in violation of Agency requirements are subject to detention and seizure.

We hope that your awareness of FSIS requirements and the information agency officials have shared with you over the past months, and in this letter, will result in your compliance going forward. To assist you further in your compliance efforts, please do not hesitate to contact Mr. Troy Hambright, Lead Specialist, of my office at (202) 418-8890 with any questions you have regarding this letter, Agency requirements, or the available compliance options outlined for you. In addition to the other contact information set out for you in this letter, you may contact the FSIS Small Plant Help Desk, at 1-877-374-7435 or
infosource@fsis.usda.gov for assistance.

Sincerely,

Scott C. Safian, Director
Enforcement and Litigation Division
Office of Investigation, Enforcement and Audit

4

July 26, 2017

Hi Mr. Miller

I hope you're doing well today.  Just a quick note to touch base and provide you with another copy of the enclosed letter dated May 24, 2017. As I mentioned during our phone conversation on June 28, 2017, our office previously sent this letter by United States Postal Service and by certified mail but it seems the certified copy was lost.  We attempted sending you a second certified copy on or about June 24, 2017, that certified copy was recently returned to our office with "refused" written across the envelope.

As we discussed during our call, I'm available to answer any questions you might have about the letter or the second application for inspection packet the Philadelphia District Office provided you on or about June 27, 2017. Please let me know if anything else I can do to assist you including setting-up a conference call for you with the Philadelphia District Office to discuss any questions you might have regarding the application for inspection process.

You can reach me at my desk phone (202) 418-8890. If I miss your call simply leave message and I will get back with you as soon as possible.

Sincerely,

GOVERNMENT
EXHIBIT
3
Hambright

## DECLARATION OF PAUL FLANAGAN

I, Paul Flanagan, under 28 U.S.C. § 1746, declare:

1.      I am a Compliance Investigator with the Compliance and Investigations Division, Office of Investigation, Enforcement and Audit, Food Safety and Inspection Service (FSIS). FSIS is a public health agency within the United States Department of Agriculture (USDA). I have been a USDA-FSIS employee since July 1992, and have held my current position since October 2004. Currently, I am assigned to FSIS' Philadelphia Compliance Sub-Office, Northeast Region.

2.      This declaration supports the United States' April 2019 civil Complaint for permanent injunctive relief in the United States District Court for the Eastern District of Pennsylvania. That action seeks to require Amos Miller and Miller's Organic Farm (collectively, "Miller's"): (a) to cease endangering the public health and safety, including through commercial sales of misbranded and non-federally-inspected meat food and poultry products; and (b) to comply with the Federal Meat Inspection Act, 21 U.S.C. § 601, et seq. (the "Meat Act" or "FMIA"), the Poultry Products Inspection Act, 21 U.S.C. § 451, et seq. (the "Poultry Act" or "PPIA"), and related regulations.

3.      I base this declaration on: (a) my personal knowledge; (b) information that I received orally or in writing during the course of my investigation of Miller's between early 2016 and present; (c) Amos Miller's testimony at a June 28, 2016 show cause hearing; and (d) my experience (and facts learned) as an FSIS Investigator.

4.      My responsibilities as an FSIS investigator include surveilling – for chemical, biological, or physical abuse, and for FMIA and PPIA compliance – the transportation, storage, and distribution of meat, meat food products, poultry, and poultry products. I do this to ensure

1

that these products are: (a) safe; (b) unadulterated; (c) stored in a sanitary environment; and (d) not misbranded – that is, marked, labeled, and packaged in accordance with law.

5.     My official duties include conducting periodic in-person "verification reviews" of meat and poultry facilities. These aim to assess compliance with sanitation, facility, recordkeeping, labeling, and other requirements under the FMIA, PPIA, and related regulations. I conduct these at a variety of facilities, including "custom-exempt" facilities, warehouses, distribution centers, retail stores, and other facilities that slaughter livestock and/or handle, store, or distribute meat food and poultry products. Under the FMIA and PPIA, custom-exempt facilities have a limited exemption from daily federal inspection requirements for "custom" slaughtering and preparing of livestock, poultry, carcasses, parts, and meat food and poultry products. Although custom-exempt facilities are exempt from daily inspection requirements, they must nevertheless strictly comply with sanitation, facility, recordkeeping, packaging, labeling, and certain other requirements aimed at ensuring that meat food and poultry products are not adulterated or misbranded.

6.     Based on my investigation of Miller's to date, and also based in part on Amos Miller's testimony at a June 28, 2016 show cause hearing in *United States v. Miller's Organic Farm and Amos Miller*, U.S. District Court, E.D. Pa. No. 16-cv-2732 (Transcript of June 28, 2016 Proceedings, at pages 6-7), I believe and understand that:

     a.     Amos Miller owns, operates, and resides at Miller's Organic Farm, which is also known as Amos Miller Organic Farm and is located at 648 Millcreek School Road, Bird-in-Hand, Lancaster County, Pennsylvania 17505;

     b.     Miller's is an unincorporated association (Pennsylvania Filing No. 4181485) that chooses to describe itself as a "private membership association" (see, for example,

2

Miller's description of itself on its commercial websites, at https://www.millersorganicfarm.com
and https://www.amosmillerorganicfarm.com/;[1]

        c.      Miller's Organic Farm files its tax returns under Amos Miller's name;

        d.      Amos Miller is responsible for, and has authority over, all of the meat and
poultry operations at Miller's Organic Farm;

        e.      Through the farm's on-site retail store, Miller's sells meat, poultry, meat
food products, and poultry products (among other products) both: (i) to its members who visit the
store in-person; and (ii) to remote purchasers, who place orders by telephone, email, and/or
Miller's web site;

        f.      Miller's ships telephone-ordered, email-ordered, and internet-ordered
meat, poultry, meat food products, and poultry products either directly to purchasers (including
by FedEx or UPS) or to multiple pick-up locations throughout the United States; and

        g.      Miller's is thus slaughtering, processing, storing, offering for sale, selling,
offering for transportation, and transporting, throughout the United States, meat, poultry, meat
food products, and poultry products that require federal inspection under the FMIA and PPIA.

*See generally* Miller's Organic Farm's web page, at https://www.millersorganicfarm.
com/, as well as Exhibit "1" hereto, which contains an April 1, 2019 print-out of Miller's March
2019 "Price List" and "Food Club" pages from that site.

        7.      There are meat and poultry establishments in the United States that operate
without FSIS knowing about their meat and poultry operations. Nonetheless, when FSIS learns

---

[1] Miller's may be in the process of changing its website. For years, its website has been
www.MillersOrganicFarm.com. I first saw Miller's apparently new website, www.amosmiller
organicfarm.com, on January 29, 2019. It is unclear whether Miller's is transitioning to the new
website (and to a name change from Miller's Organic Farm to Amos Miller Organic Farm), or
will maintain two separate websites.

that an establishment is engaged in such operations, FSIS investigates the establishment to determine whether and how the FMIA and PPIA require the operations to be USDA/FSIS-regulated.

8.      Meat and poultry facilities in Pennsylvania that FSIS is aware of and that are similar to Miller's (including establishments that appear to be Amish-owned or Mennonite-owned) operate in accordance with USDA/FSIS regulations.

9.      In early 2016, FSIS first received second-hand information that Miller's was – without the benefit of federal inspection – slaughtering, processing, and selling meat, meat food products, poultry, and poultry products. A fellow FSIS investigator and I then visited Miller's in an attempt to surveil its meat-related and poultry-related facilities and business records to determine whether that information was accurate. But Mr. Miller told us that he was denying us access and that we should return only with a "warrant."

10.     As a result, the FSIS Administrator – in early April 2016, and as authorized under the FMIA and PPIA – issued a subpoena duces tecum requiring Miller's to allow FSIS to access the farm's meat-related and poultry-related: (a) facilities; and (b) post-January 1, 2016 business records. When I served the subpoena on Mr. Miller, he still refused to permit us access.

11.     In late May 2016, Mr. Miller sent me a "Membership Contract" for Miller's Organic Farm's membership association, which I attach hereto as Exhibit "2." The contract requires members to pay a $35 lifetime membership fee and to sign an agreement that states:

        a.      "We proclaim the freedom to choose and decide for ourselves the types of products, services and methods that we think best for healthy eating and preventing illness and disease of our minds and bodies and for achieving and maintaining optimum wellness."

4

b.      "[T]he Association specializes in raw milk products and grass-fed meats and demands access to foods of our choice."

c.      "I understand that the fellow members of the Association that provide products and services, do so in the capacity of a fellow member and not in the capacity of a licensed wholesaler, retailer or provider. I further understand that within the association no wholesale/retailer-customer relationship exists but only a contract member-Association relationship. In addition, I have freely chosen to change my legal status as a public consumer/ customer to a private member of the Association. I further understand that it is entirely my own responsibility to consider the recommendations and product offered to me by my fellow members and to educate myself as to the efficacy, risks, and desirability of same and the acceptance of the offered or recommended products and it is my own carefully considered decision."

d.      "The Trustee and members have chosen Amos Miller as the person best qualified to perform services to members of the Association and entrust them to select other members to assist them in carrying out the service."

e.      "In addition, I understand that, since the Association is protected by the 1st and 14th Amendments to the U.S. Constitution, it is outside the jurisdiction and authority of Federal and State Agencies and Authorities concerning any and all complaints or grievances against the Association, any Trustee(s), members or other staff persons. All rights of complaint or grievances will be settled by an Association Committee[.]"

f.      "My activities within the Association are a private matter that I refuse to share with State Medical Board(s), the FDA, FTC, State Milk Board(s), USDA, Agriculture

5

Board(s) and any other governmental agency without my expressed specific permission. All records and documents remain as property of the Association, even if I receive a copy of them."

      g.     "I affirm that I do not represent any State or Federal agency whose purpose is to regulate and approve products."

12.     Mr. Miller told me on several occasions that he would not permit me to review his facilities and records without my first signing that contract, even though its terms would require that I inaccurately "affirm that I do not represent any . . . Federal agency whose purpose is to regulate and approve products."

13.     On June 3, 2016, in the United States District Court for the Eastern District of Pennsylvania, the United States filed a complaint to enforce FSIS' April 2016 subpoena. *See United States v. Miller's Organic Farm and Amos Miller*, EDPA No. 16-cv-2732, Docket Entry No. 1. Later that month, following a hearing at which I testified, the Honorable Edward G. Smith enforced the subpoena and required Miller's to allow FSIS to access the farm's meat-and-poultry-related facilities and records. *Id.*, Dkt. Entry No. 7.

14.     As permitted under the Court's enforcement order, in mid-July 2016 a fellow FSIS investigator and I attempted to begin inspecting Miller's. Although Mr. Miller was uncooperative, we were able to observe boxed and plastic-wrapped meat food products that were labeled "Miller's Organic Farm Private Membership Association." None of those boxes and none of the wrappings or labels bore either federal marks of inspection (which are required for federally inspected meat and poultry) or "Not for Sale" labeling (which is required for meat and poultry that is exempt from federal inspection requirements). We also observed beef and hog carcasses that: (a) were not identified as "Not for Sale"; and (b) did not bear federal marks of inspection. Finally, we saw: (a) unlabeled boxes of chickens and plastic-wrapped chickens that

6

did not bear federal marks of inspection or other labeling required for exempt poultry; and (b) what appeared to be smoked pork products that did not bear federal marks of inspection or other labeling required for exempt meat.

15.     In the course of my FSIS duties, I investigate whether establishments' meat and poultry products are misbranded under the FMIA and PPIA.

16.     Here, all of Miller's observed products were plainly misbranded under the FMIA or PPIA because: (a) if they were intended for commercial sale, they required (but did not have) federal marks of inspection (following actual federal inspection), as well as other required labeling; and (b) if they were not intended for commercial sale, they required (but did not have) "not for sale" labeling. So, in order to assess the extent of Miller's need for federal inspection, and the appropriate labeling for Miller's specific products, FSIS next needed to evaluate the extent of Miller's commercial sales of meat and poultry products, although it was already apparent to me that Miller's was selling its meat and poultry in commerce.

17.     A week after making those mid-July observations, my fellow FSIS investigator and I returned to the farm. On that occasion, Mr. Miller allowed me to copy a spiral notebook entitled "Butcher 2015." The book contained: (a) a record of dates that livestock/poultry were slaughtered at the farm; (b) the species of each slaughtered animal; (c) the name of the farm from which each animal originated; (d) a total number of animals/chickens slaughtered on each date; and (e) post-slaughter carcass weights. Mr. Miller told me that he sells meat and poultry that is slaughtered at his farm only to members of his private membership association. He also stated that the association owns Miller's sales records and that he would not invade the association's privacy rights by producing the records to FSIS.

18.     During that visit, I explained to Mr. Miller that, based on my observations and review, I had concluded that Miller's meat food and poultry products that were being offered for sale to his private association members: (a) were not being federally inspected, as required under the FMIA and PPIA; and (b) were apparently being sold to consumers not just in Pennsylvania but also in other states. I further explained that Mr. Miller could correct FMIA and PPIA violations by either: (a) taking his livestock to a federal establishment, to have the animals slaughtered, processed, and packaged with federal marks of inspection; or (b) opening a federal establishment on his farm. FSIS has since reiterated these conclusions and this information to Mr. Miller on multiple occasions.

19.     In late July 2016, I returned to Miller's Organic Farm with a fellow FSIS investigator. On that occasion, Mr. Miller told me that Miller's private association members can place orders for Miller's products (for which they pay by check or in cash) in several ways: (a) by coming directly to the farm to make purchases; (b) by telephoning Miller's and placing an order for later pick-up at the farm or for delivery by FedEx or UPS to the member's residence; or (c) through one of several association-member-organized, private "Cooperatives" (also known as "Co-ops"), including in such out-of-state locations as Miami, Florida. According to Mr. Miller, although member-customers were (at least at that time) unable to place orders directly through Miller's internet site, a member could place an order with and through one of those Co-ops. The Co-op would then submit a group of internet orders (for example, by email) to Mr. Miller's neighbor, whom Mr. Miller paid to operate Miller's website. The neighbor would then hand-deliver the orders to Mr. Miller for fulfillment. Miller's would then arrange for the ordered products to be delivered to the Co-op, the Co-op would typically mail ordering members' payment checks to Miller's, and an ordering member would pick the products up at the Co-op or

8

at a location the Co-op specified. (Mr. Miller was unwilling to clarify whether he uses a private

carrier, FedEx, and/or UPS to transport products to Co-ops.)

20.     After back-and-forth discussions with Mr. Miller about whether he would produce

Miller's sales invoices for meat, meat food products, poultry, and poultry products for even just a

three-month period between January 2016 and June 2016, Mr. Miller, in early August 2016,

stated that he was unwilling to produce any sales records/invoices that included a member-

customer's name, address, city, or even state of residence.

21.     The Office of the United States Attorney for the Eastern District of Pennsylvania

then wrote to Mr. Miller on August 9, 2016, stating:

> To avoid the need for [a show cause motion in the subpoena
> enforcement action], we are providing you until this Friday
> morning . . . to call Investigator Flanagan and arrange a time . . .
> when you will produce the requested records. Moreover, to
> provide you with further assurance that FSIS is not seeking the
> records in order to identify your members, but rather merely (as
> Investigator Flanagan explained to you yesterday) to corroborate
> the interstate aspect of your sales of meat and poultry products, the
> produced records can redact name, address, and city information
> but must include all other (including state) information.

*See* Exhibit "3" hereto (letter from U.S. Attorney's Office to Miller).

22.     Under a November 1, 2016 Consent Order in the subpoena enforcement action,

Miller's agreed that: (a) by late December 2016, and in order to avoid a non-compliance penalty,

it would complete a rolling production of certain redacted meat-and-poultry-related sales

invoices for three calendar months of 2016; (b) within 90 days after the end of that production,

FSIS could return to the farm to assess whether Miller's had cured FSIS-determined/noticed

violations; and (c) within ten days following FSIS' return visit, the United States would file a

case-closing report.

9

23.     FSIS then reviewed approximately 2,862 invoices (all dated between July and September 2016) that Miller's produced under the Consent Order. I led that review. From these invoices, FSIS determined that, during just the three-month period, Miller's sold in commerce (much of it interstate): (a) approximately 9,015 pounds of red meat food products, for $85,062.00; and (b) approximately 5,085 pounds of poultry products, for $39,050.00.

24.     On February 10, 2017, FSIS sent Amos Miller and Miller's Organic Farm a Notice of Warning, advising them that FSIS' review showed that – consistent with my observations – Miller's was engaging in operations that the FMIA and PPIA prohibit. Those operations included slaughtering, processing, selling in commerce, and transporting in commerce meat, meat food products, poultry, and poultry products that were not federally inspected.

25.     Consistent with the information that I had given to Mr. Miller over the preceding months, the Notice of Warning outlined the statutory requirements and violations and what Miller's needed to do to bring its operations into compliance. Specifically, the Notice stated that Miller's needed to: (a) apply for and obtain a grant of Federal inspection service; (b) for any retail and/or custom meat/poultry operations that might qualify for an FMIA or PPIA exemption (though FSIS observed none that would qualify), conduct those operations consistent with exemption requirements; and/or (c) pending compliance, cease any activities involving FSIS-regulated meat, meat food products, poultry, and poultry products. *See* Exhibit "1" to Declaration of Troy Hambright (Feb. 2017 Notice of Warning), which supports the United States' Complaint in this action.

26.     On March 16, 2017, two FSIS investigators and I conducted a follow-up inspection/compliance visit to Miller's Organic Farm.

10

27.     On May 24, 2017, FSIS sent Amos Miller and Miller's Organic Farm a second Notice of Warning, advising Miller's that, during the March 16, 2017 visit, FSIS (consistent with my findings and observations) found that FSIS-observed meat food and poultry products still lacked identification either as "Not for Sale" or as federally inspected. These included: (a) "meat and meat food products and poultry products in the coolers and freezers bearing the Miller's Organic label"; (b) hog carcasses hanging in a cooler; (c) poultry products; and (d) meat, meat food products, and poultry products stacked floor-to-ceiling in a new cooler/freezer. *See* Exhibit "2" to Hambright Declaration (May 2017 Notice of Warning).

28.     Plastic-wrapped meat, meat food products, poultry, and poultry products that I observed during the March 16, 2017 visit each had a label that merely identified the product and stated its month and day (but not year) of packing, its net weight, its price-per-pound, its total price, and one of the following: (a) "Miller's Organic Farm Private Membership Association"; (b) "Not for **Public** Sale"; or (c) "Not for **Public** Sale Private Membership Association." (Emphasis added.) The only observed, wrapped products that lacked one of these three labeling variations were beef frankfurters and beef & pork frankfurters that had been custom-processed at Ebersole Custom Processing in Lebanon, Pennsylvania and that bore the Ebersole label, which included the words "not for sale," but which were presumably (despite the "not for sale" labeling) intended by Miller's for commercial sale to its association members.

29.     The May 24, 2017 Notice of Warning added that, during the March 16 site visit, Mr. Miller had "acknowledged that [he has] continued to sell and ship these non-exempt and non-federally inspected meat and meat food products, and poultry products to [his] customers/members in . . . Pennsylvania and across state lines." *See* Exhibit "2" to Hambright Declaration.

11

30.     On March 16, 2017, I had asked Mr. Miller if he had considered using a federal

establishment to slaughter and process his livestock. He responded that he was told that

"Smucker's," which is a nearby establishment in Mt. Joy, Pennsylvania, has a one-year waiting

list to get animals slaughtered, which is why he still slaughters his own animals and processes

meat and poultry on his farm. I attach as Exhibit "4" hereto pages from Smucker's website,

https://www.smuckersmeats.com/customized-processing.php, which I downloaded on April 1,

2019, and on which Smucker's boasts that:

> All of the services and products that we offer are under the vigilant
> eye of USDA inspectors. A USDA inspector is present whenever
> any slaughter operations are conducted. The inspector's job is to
> monitor and verify that livestock are healthy when slaughtered,
> handled humanely, and the finished carcasses are clean so as to
> reduce the possibility of contamination. A second USDA inspector
> monitors all other processes and while this inspector is not required
> to be on site at all times, this individual is responsible for checking
> and verifying all the records associated with the food safety
> programs that we have established. USDA inspection is not a
> license or certification, rather it is granted to plants that meet
> federal requirements as long the plants adhere to the applicable
> regulations.

31.     I understand that a new Amish-owned federal establishment, Belmont Meats, will

soon open (or has recently opened) in Paradise, Pennsylvania, which is in Lancaster County, and

will slaughter and process livestock and poultry. Belmont Meats passed final USDA inspection

on February 27, 2019, and meat and poultry slaughtered and processed there will bear federal

marks of inspection.

32.     The May 2017 Notice of Warning further stated that, during the March 2017 visit

to the farm, FSIS again counseled and advised Mr. Miller (and I was among the officials who

gave him the counsel and advice) about the requirements that his meat and poultry and related

products be federally inspected, unless exempted from inspection, and further stated:

12

> [FSIS] expressed the importance for you to take action to change
> your current operations and referred you to the possible business
> options open to Miller's as noted in our [February 2017] Notice of
> Warning and other information previously provided you. These
> options included: applying for a grant of Federal inspection
> service, conducting retail and/or custom operations under the
> exemption from inspection, ceasing any activities involving FSIS-
> regulated products, or conducting other business activities in
> compliance with applicable State and Federal laws. You
> acknowledged reading the Notice of Warning, but stated that the
> notice did not offer any solutions because your customers/members
> do not want their products to be inspected.

*See* Exhibit "2" to Hambright Declaration, at p. 2-3 (also documenting how FSIS again explained

to Mr. Miller, in detail, ways for Miller's to apply for a grant of Federal inspection or try to

qualify for an exemption).

33.    During the March 2017 site visit, Mr. Miller added that the only way he would

change Miller's operations to comply with the FMIA and PPIA would be if his members agreed

to the change. I responded that his business is in his name and that he is responsible for

regulatory compliance. I also held a question-and-answer session with approximately 15 of

Miller's employees. My answers included further explanations about federal inspection and

various exemption requirements, the processes for obtaining them, and some of the possible

impacts and effects of federal inspection on an establishment's operations.

34.    FSIS waited several months for Miller's to respond to the May 2017 Notice of

Warning. By November 2017, Miller's had plainly failed meaningfully to do so. On November

14, 2017, a fellow FSIS investigator and I therefore returned to Miller's Organic Farm. Our goal

was to review facilities and records and to assess whether Miller's, even though it had not

responded to the warning notices, had taken (or was at least beginning to take) meaningful steps

to address FSIS' serious concerns. At that time, Mr. Miller stated to us (as previously) that,

because Miller's is a "private membership association," it does not have to follow federal law.

13

He also stated that, if we entered his facilities, we would be doing so at our "own risk" and that he was not giving us permission to enter. We then served a new administrative subpoena duces tecum on him that sought the access to facilities and documents that he was denying to us at that time. To date, even over a year later, Miller's has not complied with or even responded to the November 2017 subpoena.

35.     My observations and interactions with Mr. Miller show that Miller's – despite FSIS having provided it with detailed written and oral warnings, explanations in layman's language about how to come into compliance with the FMIA and PPIA, offers of further guidance and counsel, and abundant opportunity to cure cited violations – continues to ignore and violate these laws by: (a) slaughtering and processing meat and poultry without federal inspection; and (b) both within and outside of Pennsylvania, selling, offering for sale or transportation, and transporting misbranded and non-federally-inspected meat, meat food products, poultry, and poultry products.

36.     Since my last interaction with Mr. Miller in November 2017, I have continued to monitor Miller's internet presence. The contents of Miller's internet sites support my understanding and findings that Miller's continues to sell non-federally-inspected, misbranded meat food and poultry products in commerce.

37.     I have investigated scores of Pennsylvania meat and poultry establishments during my FSIS tenure. In my experience, Miller's is the only such establishment (private membership association or not) that has similarly persisted in: (a) not recognizing FSIS' authority to review meat and poultry facilities and documents; (b) resisting FSIS' exercise of its authority to review those facilities and documents; and (c) ignoring, despite oral and written warnings, FMIA and PPIA federal inspection requirements. My view is that Mr. Miller – following the 2016-2017

14

subpoena enforcement action in this Court, and the Court's Orders and comments at hearings –

cannot reasonably take the position that he is unaware that Miller's is subject to (and must

comply with) the FMIA and PPIA.

I declare, under penalty of perjury under the laws of the United States of America, that

the foregoing is true and correct to the best of my knowledge.

Executed on this ___1st___ day of April, 2019.

Investigator Paul Flanagan
Compliance and Investigations Division
Office of Investigation, Enforcement and Audit
Food Safety and Inspection Service
United States Department of Agriculture

15

# Miller's Organic Farm
## A Private Membership Association
### 648 Mill Creek School Rd.
### Bird-in-Hand, PA 17505
# March 2019 Specials
AVAILABLE ONLY WHILE EXCESS SUPPLY LASTS
**To receive specials, please mention March Specials.**

GOVERNMENT EXHIBIT 1 Flanagan

**$1.00 off per pound or container:**
- Daikon Radish Juice
- Garlic Dill Pickles – pt & qt
- Fresh Sheep Milk – qt
- Frozen Sheep Milk – ½ gal
- Eye Round Roast – Frozen
- Bread & Butter Pickles – qt
- Cured, Salted, Sliced Ham – Frozen
- Sirloin Tip – frozen
- Buffalo Yogurt – pt
- Buffalo Kefir – pt
- Cured, Salted Ham Steak – frozen
- Sirloin Steak – frozen
- Country Bacon – cured & salted
- Flank Steak - Frozen
- Frozen Chicken Legs & Thighs (must buy 2 pk or more)

**$2.00 off per pound or container**
- Frozen Chicken Legs & Thighs (must buy 10 pk or more)
- Buffalo Milk – qt & pt
- Buffalo Cream
- Buffalo Yogurt – qt
- Boneless Chicken Breasts - frozen (must buy 4 lb or more)

**$5.00 off**
- Buffalo Milk – half gallon
- Large & Small Veggie Boxes

**$10.00 off**
- Buffalo Milk – gallon

**50% off per pound or container**
- Frozen Goat Greek Yogurt – pt
- Buffalo cheeses – buffleta, cheddar, deli delight, hot jack, cave-aged

**NEW ITEMS**
- Buffalo Jack Cheese - $12.50/ ½ lb
- Sheep Colostrum - $22.00/pt
- Sheep Cottage Cheese - $18.00/pt
- Fresh Sheep Cream - $14.00/8 oz
- Goose Eggs - $3.50/egg
- Dandy Blend Ice Cream - $12.00/qt
- Kimchee Juice - $3.50/pt
- Buffalo Marrow Bones - $18.50/lb
- Buffalo Tenderloin - $30.50/lb
- Buffalo Ribeye - $18.50/lb
- Buffalo New York Steak - $18.50/lb
- Small Veggie Boxes - $35.00
- Large Veggie Boxes - $45.00
- Ground Goat - $12.00/lb
- Goat Cubes - $16.00/lb
- Goat Chops - $24.50/lb
- Goat Roast - $18.50/lb

**PRICE CHANGE**
- Beef Ribeye Steak - $17.50/lb
- Really Raw Honey - $12.75/16 oz, $39.75/5 lb

---

***Inventory Reduction Blowout***

*All soft buffalo cheeses (8 oz.)*

*Buy one, get one free*

*(Must mention to receive discount)*

---

**Water Buffalo Milk Special**
**Gallon - $25.00 ($10 off)**
**Half Gallon - $14.50 ($5 off)**
**Quart - $8.00 ($2 off)**
**Pint - $4.00 ($2 off)**

---

**Inventory Reduction Blowout**

**Frozen Chicken Legs & Thighs**

**2 – 9 pks - $4.75/lb**
**10 or more pks - $3.75/lb**

**(Must mention to receive discount)**

---

**Inventory Reduction Blowout**

**Frozen Goat Greek Yogurt**
50% off
**Now just $4.00/pt**

# March 2019 Newsletter

To our Members,

First we want to thank God our Creator who made things so well. We are again so richly blessed with nutrient dense foods. We had a bountiful harvest so our freezers and coolers are now stocked to supply your needs with meals full of healthy nutrition.

We now have the option of sending your package with UPS. They have come forward with better rates, especially for your larger orders. If you have a preference which carrier you'd like, please specify when placing your order. For certain areas you should see a savings of $5 - $10 per order with UPS. For larger orders it could be more. Please note: for West & Central Coast the time in transit for your package could be one (1) day longer with UPS ground than Fed Ex ground. If you don't specify which carrier, then we'll use our best judgment to fill your needs.

We now have goose eggs available. They are sold by the egg. The duck eggs should be plentiful again in April. When ordering these, please specify 'no substitutions' or 'substitute with chicken eggs'.

Another thing that is quite seasonal is goat and sheep products, especially the cream and butter. The water buffalo animal, however, is quite different from sheep and goats. Water buffalo are plentifully producing in the fall and winter seasons, whereas sheep and goats are not. This is due to the nature of the animals mating seasonally. Our goal is to work with nature as much as possible, and at the same time have a diversified nutrient-dense, fresh foods available year round. When placing an order for sheep and goat products, please specify 'no substitutes' or 'substitute with buffalo products', otherwise we will call or use our best judgment. We thank you for understanding this situation and where we are coming from.

It is the time of year when the flu bugs are flying around. We have a homemade tonic for the flu season. It is called Supertonic. It is sold in 4 oz. bottles.

We sell cod liver oil in 4 oz. bottles. The name is Rosita Cod Liver Oil.

We have a shortage of fresh and frozen camel milk, therefore we ask that you order one week in advance of when you want the milk.

We now have soy-free whole goose and duck available.

Our veggie mix is available in pints.

We now have soy and corn free chicken available for people who are sensitive to corn and soy – frozen only.

We are running an inventory reduction blowout on our frozen chicken legs & thighs. Receive $1.00/lb off if you purchase 2-9 packs of chicken legs & thighs. Receive $2.00/lb off if you purchase 10 or more packs. (Must mention to receive discount.)

Another inventory reduction blowout is on frozen goat Greek yogurt – 50% off while supplies last.

We sell various cuts of water buffalo meat, which is $2.00/lb more than beef.

We have plenty of buffalo cream, but we are running short on sheep and goat cream.

We are also busy baking fresh soaked, sprouted and sourdough breads. See our large variety available in the price list. Also available are gluten-free muffins and 2 kinds of cookies. We also have 3 types of pies available – apple, shoofly and veggie chicken pies.

We have 2 kinds of noodles available. The soaked noodles are yellow, and the sprouted noodles are brown.

The sweet potatoes are now in stock again.

If you want a delicious treat, try our black raspberry smoothies, cinnamon milk, chocolate milk or eggnog.

We sell 3 different kinds of chips – homemade Amos chips, sweet potato chips and Zerbe chips.

We are having a discount on water buffalo milk, cream, yogurt and kefir through the month of March. (See specials) The camenbuff is now in stock again.

We have some A2A2 dairy products available for the dairy sensitive people. Our goal is to have all A2A2 dairy available in the near future, hopefully in 2019. Please note that the buffalo dairy is automatic A2A2. Its genes never have changed that we are aware of. The milk has a delicious sweet flavor to it. Don't forget to taste the buffalo milk egg custard. It's delicious as a desert or quick breakfast.

We now have 100% A2A2 cream and butter for $2.00 more than our regular dairy. (Please specify when ordering.) Our regular dairy does have a large amount of A2A2, but still has a small amount of A1A2. We made A2A2 available for the people that are sensitive to A1A2 milk. There has been research done which shows that A2A2 milk is more beneficial and nutrition could be enhanced.

We sell 2 different kinds of salt – herbal salt & celtic sea salt

FREE GIFT for March – When you purchase $100 or more receive a half pound of ground buffalo (must mention to receive).

We now sell frozen cold-pressed grape juice in half gallons. It is not fermented. We still have the fermented grape juice available for our food coop orders, but for shipping with Fed Ex or UPS it is a challenge because of all the sizzling in the bottle, due to the shaking bouncing of the box. We can still ship with your mail order, but then the risk would be yours. We'll try to seal the best we can, but won't guarantee the best result in shipping. A substitute we have available would be the cran-grape water kefir.

A frequently asked question – "Can I get a membership form and place an order online and pay with my credit card?" As you may already know, Miller's Organic Farm does not have a computer on the farm, neither do we have a way set up for you to pay with your credit card at our farm. We'd prefer to do business the so-called old fashioned way, calling your order in by phone. You can leave a message with your name, address, phone number and your order, or call Monday through Friday between 8:00 and 4:00. (Please note that between 11:30 and 12:30 we take off for lunch.) We will try to have someone answer the phone if at all possible. When shipping by Fedex, UPS or Eastern Connection we usually put an invoice in the box with your complete total including shipping and handling. Then when you get the package please send a personal check by regular mail (payable to Miller's Organic Farm). My saying goes "If you trust us for the food, we trust you for the money". Let's work together to keep this statement valid. We really, really appreciate your efforts in this matter. Together we can both succeed. We do have a food coop available in various areas. Most of them have a food coordinator in their area. In that perspective you would contact them and give them your order with your name attached to it, and they give us the food orders. Then we put that shipment on a pallet with refrigerated trucking. The food coordinator then contacts you to let you know what time and where to meet to pick up your fresh food order. The food coordinator collects the money and sends it to the farms going through the food coop. You can save on shipping and handling. If you would like to know if we have a coop in your area or would like to start one in your area, feel free to call us at the farm @ (717) 556-0672. Many of our food coordinators have a passion to get nutrient dense food out into the next generations and that is certainly our goal here at Miller's Organic Farm. We do have a few food coordinators that are especially interested in getting nutrient dense food to your door for people that live in more rural areas that don't live close to any of our food coops. They made it available for your convenience to sign a membership form and order & pay online with your credit card. The websites are called Millersorganicfarm.com and amosmillerorganicfarm.com . You can choose from either one, but please note when ordering online if you have a problem, you can still call the farm directly at 717-556-0672 and please specify (online order) so we can find our current file with your order to respond to your call quicker. Also note when ordering online, there is a 10% food order fee added to your shipping and handling costs to help cover the third party website hosting expenses. We greatly appreciate your understanding to this matter.

Another frequently asked question is "What is the difference between 1st and 2nd cow colostrum?" The first colostrum is harvested within the first 6-24 hours after the cow gives birth to her calf. Some people have requested the first colostrum before 6 hours. Our goal is to give the newborn animal first chance. Then we take the balance of the colostrum for bottling. The 2nd colostrum is usually harvested within 24-48 hours after the cow gave birth to her calf. After that the milk from the cow goes to regular milk. The first and second colostrum can vary in consistency & color depending on the genetics and also the season of the year. We have a limited supply available of the sheep and goat colostrum. It is mostly available in the spring and summer. We do not keep 1st and 2nd colostrum separate like we do the cow colostrum, rather we combine the milk. We usually save the first 2 days for colostrum after the sheep and goat give birth. For buffalo colostrum, we use about 4-5 days of colostrum milk rather than 12-48 hours like we do for cow colostrum. The reason for this is that it was a challenge to use that milk to make cheese. We haven't figured out exactly why except for the natural probiotics and special enzymes, proteins, etc. that colostrum milk might be competing with the culture that we use for making cheese.

If you have any questions, please give us a call @ (717) 556-0672.

Amos Miller & Staff
Miller's Organic Farm



**Millers Organic Farm**
**Private Membership Association**

**648 Mill Creek School Road, Bird-in-Hand, PA 17505 (717) 556-0672**
Leave message with order.
When placing an order, please allow 24-36 hrs. for shipping to avoid a rush order fee
**Prices are subject to change without notice.**

## RAW COW'S MILK & DAIRY

Milk - $4.50/hf gal, ($8.00/gal  co-ops only)
Milk in glass bottle - $7.00/hf gal w/ handle,
  $11.00/gal no handle – co-ops only
Cream, heavy in glass bottle - $8.50/pt, $14.50/qt,
  $28.50/half gal
Cream, heavy - $7.50/pt, $13.50/qt,
  $26.50/3 ½ lb, (1 3/4 qt.), $32.00/5lb (2 1/2 qt)
Cream, light in glass bottle - $7.50/pt, $13.00/qt,
  $24.00/half gal
Cream, light - $6.50/pt, $12.00/qt, $20.00/hf gal
Sour Cream - $8.00/pt, $14.50/qt
Crème fraiche - $8.00/pt, $14.50/qt
Buttermilk - $2.00/quart
Buttermilk, cultured - $2.50/quart
Colostrum, first - $10.50/pt, $19.50/qt
Colostrum, regular - $4.00/pt, $7.50/qt
Whey - $2.00/qt, $2.75/hf gal
Mild kefir - $3.00/pt, $5.50/qt
Regular kefir (mixed mild-strong) - $3.00/pt,
  $5.50/qt
Strong kefir - $3.00/pt, $5.50/qt
Kefir grains – strong $2.50/tsp, mild $6.50/tsp
Yogurt - $2.50/pt, $4.50/qt
Greek Style Cow Yogurt (plain, maple) - $5.00/pt,
  $8.50/qt
Cottage cheese – w/o cream $4.00/pt, w/ cream
  $4.50/pt
Cottage Cheese in glass bottle – w/o cream
  $5.50/pt, w/ cream $6.00/pt
Cream Cheese  – $5.00/8oz, $9.00/lb

Cheese Spread - $5.00/8oz, $8.50/lb
Eggnog - $6.50/qt
Butter, no salt - $7.75/8oz, $12.50/lb
Butter, salted - $8.00/8oz, $13.00/lb
Butter, cultured, no salt- $8.50/8oz, $14.50/lb
Butter, cultured, salted- $8.75/8oz, $15.00/lb
Chocolate Milk - $6.50/ ½ gal., $12.00/gal.
Cinnamon Milk - $4.00/qt., $6.50/ ½ gal.
Raspberry Yogurt Smoothie—$6.00/pt

## RAW HARD COW CHEESE

(specify salted or no-salt)
Cheddar, Sharp Cheddar, -$7.25/lb,
  $6.50/lb for 5-6 lb
Swiss, Monterey Jack, Herbal Jack,– $6.75/lb or
  $6.00/lb for 5-6 lb block
Farmers, Colby, Pepper Jack, Colby Dill(salted only)-
  $6.75/lb or $6 for 5-6 lb block
Garlic Cheddar (salted only)-$7.25/lb or $6.50/lb for
  5-6 lb block
Mushroom Leek (salted only) - ,– $6.75/lb or
  $6.00/lb for 5-6 lb block
Havarti Cheese—$8.50/lb
Gouda Cow Cheese-(salted only)-$8.50/lb
  (1 lb or 5 lb block)
Cow Blue Cheese (soft) ( salted only) –
  $13.75/lb
Smoked Cheddar (salted only) - $10.50/lb

**GRASSFED FARM FRESH FOODS**

Our cows are on a high forage diet and are fed no grain to ensure a higher quality, more nourishing and better tasting food.

**Farm Store Hours**
Mon—Fri. 8:00 AM—4:30 PM EST
Saturday by appointment

No Sunday Sales

**Shipping options** include FedEx Ground and FedEx Overnight. **Handling charges** are $8 - $16 per box, depending on size and content (shipping not included)  When **shipping eggs** with FedEx, please add $1.00 per dozen eggs ordered.



**RAW CAMEL DAIRY**
Camel Milk – 1-10 pt - $15.00/pt,
    11 or more pt - $12.50/pt,
Camel Yogurt—$17.00/pt
Camel Kefir—$17.00/pt
Camel Milk Soap - $6.50/bar

**RAW SHEEP MILK & DAIRY**
Milk - $14.00/qt  (loaded w/Vita C)
Frozen Sheep Milk—$15.00/ 1/2 gal.
*Colostrum—$22.00/pt
*Cottage Cheese—$18.00/pt
Butter (salted & no salt) - $18.00 / 6oz.
Yogurt - $12.00/pt, $19.00/qt
Kefir - $12.00/pt, $19.00/qt
*Fresh & Frozen Cream—$18.00/ 8 oz
Lucious Lamp Sheep Cheese—$15.00/ 1/2 lb
Cheese (Cave aged): Ewes Dream &
    Mild Shepherd's Delight - $16.50/lb
Feta (salt & no salt)—$16.50/lb
Tallow - $8.00/pt.



IMPORTANT ORDERING INFORMATION

We use insulated boxes with ice-packs accordingly.  Prices subject to change without notice.  When placing an order, it is your responsibility to clearly specify exactly what you want as we have quite a few options such as:  salted or unsalted cheese, frozen or unfrozen meats, washed or unwashed & unrefrigerated eggs, so please be aware of such options.  We are not liable for any unclear orders but will use our best judgment. Thank you kindly for your support, and we look forward to providing you with healthy food.



**RAW GOAT MILK & DAIRY**
Milk - , $6.00/qt, $10.00/hf gal
Milk in glass bottle - $12.00/hf gal
Cream - $14.00/8oz
Kefir - $9.50/qt
Yogurt - $9.50/qt
Greek Yogurt (plain) - $8.00/pt
Whey - $6.00/qt
Cottage Cheese - $11.00/lb
**Chevre Cheese (soft):** garlic, plain –$6.75/8oz
**Cheese (hard):** cheddar(salt & no salt)– $13.50/lb
Goat Feta (salted & no salt)—$15/ 1/2 lb, $13.50/1 lb
Butter (specify salted or no salt) - $10.50/4oz
Goat 11 Strain Probiotic Drink - $7.50/pt
Goat Milk Soap - $3.50/bar
Unscented Oatmeal Goat Soap—$3.75/bar
Liquid Goat Soap - $6.75/8 oz.



**WATER BUFFALO DAIRY & MEAT**
Milk - $6 00/pt, $10.00/qt, $19 50/hf gal
　　　　　($35.00/gal. coops only)
Frozen Colostrum  - $9.50/pt
Cream—$14 00/8 oz.
Yogurt - $8.00/pt, $13 00/qt
Kefir—$8 00/pt
Raw Butter—$12.50/ 1/2 lb.
Buffeta - $12 50/ ½ lb block
Camenbuff - $12.00/6 oz. wheel
Cheddar—$12 50/ 1/2 lb  block
Deli Delight Cheese—$12 50/ 1/2 lb
*Jack Cheese—$12.50/ 1/2 lb
Hot Jack Cheese—$12.50/ 1/2 lb
Cave Aged Cheese—$12.50/ 1/2 lb
Soft Cheese Spec. flavor: plain, garlic & chives,
chipotle heat, herbal bliss - $6.75/8  z.
Egg Custard—$10.50/pt.
Cottage Cheese—$12.50/pt.
Whey—$6.00/qt
Pet Food—$6.75/lb
Tallow—$6.00/pt
Ice Cream – (van.) - $25.00/qt.
Buffalo Stix—$7 00/ 1/2 lb
Ground Water Buffalo - $10.00/lb
*Ground Buffalo w/ organs —$14.00/lb
Buffalo Cubes—$12.00/lb
Buffalo Broth—$8.75/pt, $12.75/qt
*Bacon—$17.50/lb
*Marrow Bones—$18.50/lb
*Tenderloin—$30.50/lb
*Ribeye—$18.50/lb
*New York Steak—$18.50/lb



## Poultry & Meats

**CHICKEN** - **Soy-FREE**
Whole Fryers  (avg. 4-6 lb) - $ 4.95/lb
Smoked Fryers (avg. 4-6 lb)—$6.95/lb
Breasts,boneless (1/pk,avg.1lb) - $13.00/lb
Breasts, bone-in (1/pk, avg 1 ½ lb) - $10.50/lb
Tenderloin ( no bone or skin) - $22.50/lb
Legs & Thighs (2/pk, avg 1 ½-2lb) - $ 5.75/lb
Wings - $ 4.75/lb
Necks & Backs (1/pk, avg 2 lb) - $ 5.75/lb
Hearts  - $ 16.50/lb
Liver - $16.50/lb
Gizzard - $5.75/lb
Whole Bird for Stock (avg 3 lb) - $4.00/lb
Heads for Stock - $2.00/ea
Feet for Stock - $ 1.50/ea
Fertile Eggs -  $7.00/doz
Pet Food: Ground - $5.75/lb
Chicken Fat Rendered - $3.75/pt.
Chicken Fat Raw - $3.50/lb
Liver Soup - $10.25/pt, $18.00/qt
Chicken Noodle Soup—$6.00/pt, $11.50/qt
Chicken Pie - $11.00/6 in., $16.00/9 in
Ground Chicken (soy free) - $11.50/lb
Chicken Broth - $5.50/pt, $8.75/qt

**DUCK - Soy FREE**
Duck (appx. 4-5lbs) - $7.50/lb
Half Duck - $8.00/lb,
Duck Eggs—$9.00/doz
Duck Heart—$26.50/lb

**TURKEY** – **Soy-FREE**
Wh Turkey - $4.75/lb
Wh. Smoked Turkey - $5.75/lb
Breast - $11.50/lb
Smoked, Sliced Breast—$14.50/lb
Tenderoin—$16.50/lb
Thighs - $11.50/lb
Legs - $7.00/lb
Wings - $6.75/lb
Ground Turkey - $12.50/lb
Turkey Sausage – $13.50/lb
Turkey Heart - $9.50/lb
Turkey Liver—$9.50/lb
Turkey Gizzards—$5.50/lb
Turkey Scrapple - $6.50/lb
Turkey Broth - $5.50/pt, $8.75/qt.

**GOOSE** – **Soy FREE**
Whole Goose (avg. wt 6 lb) - $10.00/lb
Goose Breasts—$17.00/lb
Goose Gizzards—$15.50/lb
*Goose Eggs—$3.50/egg



**GRASSFED BEEF**
Ground Beef $7.00/lb, 2lb fam.Pk - $6.00/lb
Ground Beef w/ organs - $12.00/lb
Ground Beef Patties—$8.00/lb
Beef Cubes - $7.50/lb
Beef Sausage - $7.00/lb
Round Steak - $8.00/lb
Shoulder Steak w/ small marrow bone- $7/lb
London Broil - $9.50/lb
Delmonico - $13.00/lb
Beef Chip Steak - $9.50/lb
Skirt Steak - $18.50/lb
Sirloin Steak - $9.50/lb
Sirloin Tip - $9.50/lb
New York Steak - $16.50/lb
*Rib Eye Steak - $17.50/lb
T-bone Steak - $18.50/lb
Beef Tenderloin - $28.50/lb
Beef Ribs - $4.50/lb
Brisket - $11.50/lb
Flank Steak - $18.50/lb

Chuck Roast -  $6.50/lb
Round Roast - $7.50/lb
Eye Round Roast - $7.50/lb
Rump Roast -  $9.50/lb
Ox tail, avg wt 1-3lbs @ $14.50/lb
Ox tongue - $8.50/lb
Soup bones  – $8.75/lb
Marrow bones - $16.50/lb
Knuckle bones - $3.00/lb
Regular bones  - $2.50/lb
Beef heart - $10.50/lb
Beef kidney - $7.50/lb
Beef liver - $12.50/lb
Adrenal glands - $18.50/lb
Thymus glands—$18.50/lb
Thyroid glands—$18.50/lb
Beef Brains—$26.50/lb
Pet Food: ground beef & organs – $4.75/lb
Beef Broth - $5.50/pt, $8.75/qt
All Beef Bologna - $7.50/lb
All Beef Hotdogs - $8.50/lb
Tallow - $3.25/pt, $5.75/qt
Beef Fat - $2.50/lb
Beef Jerky - $6.75/4 oz

**VEAL**
Will sub. w/ beef  if not in stock, all veal is frozen
Ground veal - $9.50/lb
Veal cubes - $10.50/lb
Veal Broth - $5.50/pt, $8.75/qt
Veal Round Steak - $9.50/lb
Veal Flank - $16.50/lb
Veal Liver - $29.50/lb
Veal Chuck Roast - $8.50/lb
Veal New York Steak - $18.50/lb
Veal Heart - $12.00/lb





## MILK-FED PORK

Loin Roast, avg wt 2-3lb - $8.50/lb
Pork Chops - $8.25/lb
Spare Ribs - $7.50/lb
Steak - $7.00/lb
Tenderloin Steak - $21.50/lb
Roast, avg wt 2-4lbs @ $7.00/lb
Ground Pork - $6.00/lb
Ground Pork w/ organs - $6.25/lb
Pork Liver—$5.50/lb
Sausage (rope) - $6.50/lb
Pork Sausage (loose) - $6.50/lb
Breakfast Sausage (links) - $7.50/lb
Italian Breakfast Sausage Links—$8.00/lb
Liverwurst Sausage—$8.50/lb
Scrapple - $5.50/lb
Ham Hock, raw & unsalted -$7.00/lb
Ham Hock, cured & salted - $8.00/lb
Raw Ham sliced - $5.00/lb
Cured and Salted Sliced Ham - $6.50/lb
Wh Ham cured-salt, avg wt 7-10 lbs @$6/lb
Cured/ Salted Ham Steak (3/4" th) – $6/lb

Pork Shoulder, bone in (8-12 lb.) - $6.50/lb
Bacon (raw & unsalted) - $12.50/lb
Bacon (cured & salted) - $14.50/lb
Country Bacon (cured-salted) - $11.50/lb
Country Bacon (raw & unsalted) – $10.50/lb
Canadian Bacon(cured & salted)- $11.50/lb
Canadian Bacon(raw & unsalt) - $10.50/lb
Spare Ribs (cured, salted) - $9.50/lb
Ground  Ham & Bacon (cured, salt) - $8.50/lb
Pork Brains  - $16.50/lb
Hot Dogs (pork & beef, no nitrates)-$7.50/lb
Pork Roll Bologna—$6.50/lb
Lard - $5.00/pt, $7.50/qt , $12.50/5 lb
Pork Organs - $5.50/lb
Pet Food (ground pork w/organs) - $4.25/lb
Pork Broth - $3.00/pt, $5.50/qt
Pork Liverwurst - $5.50/lb





## SEAFOOD
Alaska Wild Salmon-whole fillets $14.50/lb,
                              portions $16.50/lb
Icelandic Haddock - $9.50/lb
Fish Broth - $7.50/pt, $12.75/qt

## GOAT
*Ground Goat—$12.00/lb
*Goat Cubes—$16.00/lb
*Goat Chops—$24.50/lb
*Goat Roast—$18.50/lb
*Goat Broth—$8.50/pt

## LAMB
Ground Lamb - $12.00/lb
Lamb cubes - $16.00/lb
*Lamb chops - $22.50/lb
Lamb Broth - $5.50/pt, $8.75/qt
Lamb Roast - $16.50/lb
Ground Lamb w/ organs - $14.50/lb
*Lamb  Liver—$12.00/lb
Mutton sausage—$12.50/lb
Lamb Brains—$32.50/lb  (OUT OF STOCK)
## RABBIT
Whole rabbit (3 lb) —$10.50/lb



## Nuts & Veggies

### CRISPY NUTS
(12 oz bag)

Almonds - $15.00
Brazil Nuts - $14.00
Pecans - $16.00
Sunflower Seeds - $7.00
English Walnuts - $16.00
Pumpkin Seeds - $7.00
Black Walnuts - $15.00
Cashews - $12.00
Seasoned Mix - $16.00
Trail Mix - $16.00
Sweet & Spicy Nut Mix - $16.00
Honey & Spice Nuts—$16.00

### VEGGIES

Pickled Beets - $4.00/pt,  $7.00/qt
Garlic Dill Pickles - $3.75/pt, $6.50/qt
Zucchini Relish-$4.75/pt
Carrots—$3/lb.          Asp Puree—$7.50/pt
Pickled Okra - $5.00/pt, $9.50/qt
Frozen Green Peas-$12.50/lb.
Sweet Potatoes—$2.00/lb
Fresh Raw Garlic—$8.00/lb  (Out Of Stock)
Frozen Asparagus—$6.00/lb
*Veggie Boxes—$45.00/lg,  & $35.00/sm

### FERMENTED VEGGIES

Fermented Kimchee - $6.50/pt, $11.50/qt
*Fermented Kimchee Juice - $3.50/pt, $6.00/pt
Fermented Amos Ketchup - $5.00/8oz, $8.00/pt
*Fermented Daikon Radish - $4.50/pt.
Fermented Daikon Radish Juice—$3.50/pt.
Fermented Dill Whole Pickles - $3.75/pt, $6.50/qt
Fermented Pickle Relish - $4.50/pt, $7.50/qt
Fmtd. Bread & Butter Pickles - $4.00/pt, $7.50/qt
Fermented Cabbage Juice - $7.50/qt
Fermented Sauerkraut - $4.50/pt, $8.00/qt
Fermented Tomato Salsa - $4.75/pt
Fermented Hot Salsa - $4.75/pt

Fermented Chow Chow—$5.50/pt., $9.50/qt
Fermented Carrots & Onions - $4.75/pt
Fermented Beets—$4.00/pt, $7.00/qt
Fermented Vege Mix - $5.50/pt
Fermented Onions - $4.75/pt
Fermented Garlic—$8.00/8 oz
Beet Kvass - $6.00/qt
Horseradish - $5.75/8oz

Flavors: Butter Pecan, Chocolate, Dandy Blend
Strawberry, Vanilla, Ginger,
Chocolate Peanut Butter, Blackberry

*please specify flavor when ordering*

ICE CREAM— $7.00/pint  $12.00/quart  6 or more quarts $11.00/qt

# Bakery, Staples, Treats & Drinks

## BAKERY

Soaked Breads: Spelt, Wheat, Cinn-Raisin Wheat
(spec)- $6.00/loaf
Sourdough Breads:Rye,Wheat, 7-grain (spec) $6/lf
Sprouted Spelt Bread - $8.00/loaf
Sourdough Heritage Wheat Bread - $7.00/loaf
Sliced Bread, any type – add $2.00/loaf
Angel Food Cake (half) - $6.50
Shoofly Pie (8") - $8.00
Apple Pie (8") - $9.00
Pumpkin or Zucchini Bread – $6.00/loaf
Muffins Gluten-free:Lemon-Poppy, Vanilla-Pecan,
Coconut, Blueberry(specify flavor)$7.50/hf doz
Almond Butter Choc. Chip Cookies (gluten free)—
$6.50/ hf doz., $12.00/doz. (not 100% organic)
Coco. Choc.ChipCookies(gluten free)–
$5.00/hf.doz., $9.50/doz.

## STAPLES

Celtic Sea Salt- coarse$6.75/lb, fine $10.25/lb
Honey(Orange Bloss.,Wild Flower) - $23.50/5lbs,
$8.00/17oz
*Really Raw Honey - $12.75/16 oz., $39.75/5lb.
Miller's Raw Honey—$12.50/ 16 oz.
Maple Syrup (Grade A) - $14.50/qt.
Maple Syrup (Grade B) – $16.50/qt
Ghee - $16.50/pt
Noodles, Spelt - $7.50/lb
Noodles, Sprouted Spelt - $9.50/lb
Best Salad Vinegar – $4.50/pt
"Dancing Goat" Olive Oil—$22.00/16.9oz
Homemade Supertonic - $19.50/4 oz.
Vanilla Extract - $22.50/4 oz.
Chickweed Healing Salve—$5/1oz, $16.00/4 oz.
Coconut Oil –$19.50/qt., $56.00/gal (raw, cold-
pressed,Philippine)
Fmtd. Coconut Oil - $16.50/pt., $29.00/qt.

## DRINKS

Frozen Carrot Juice—$10.00/pt
Fermented Lemonade - $6.00/qt
Limeade— $6.00/qt.      Ginger Ale – $6.00/qt
Frozen Cold Pressed Grape Juice - $9.50/ 1/2 gal
Kombucha Tea – $5.00/qt
Cranberry Kombucha - $6.00/qt
Fermented Sourdough Kvass – $6.00/2liters
Water Kefir (cranapple, blueberry, ginger, plain,
cherry, apple, grape) - $7.00/qt
Raw Pear Cider - $6.00/qt., $10.50/ ½ gal.
Raw Apple Cider - $7.00/qt, $10.50/ ½ gal, $16/gal

## TREATS

Applesauce - $5.50/pt
Apple Butter – $4.00/8 oz. ,
$7.00/16 oz.
Apple Cider Vinegar - $7.25/
qt.
Jelly (S-berry, Blueberry, Red
Raspberry)—$6/8 oz



Frozen Blueberries—$6.00/pt.
Frozen Crushed Strawberries—$6.00/pt
Frozen Blackberries—$6.00/pt
Black Raspberry Juice—$8.50/pt.  (Out of Stock)
Egg Custard - $7.50/pt
Homemade Mayonnaise – $4.50/pt
Honey Mustard – $3.50/8oz
Kombucha Mushroom - $4.50
Homemade Peanut Butter—$6.50/8oz, $9.00/pt
Homemade Granola - $9.00/16 oz.
Granola Bars - $3.00/bar
Chemical Free Sm. Popcorn Kernels - $6.50/lb
Potato Chips non-organic Zerbe – $5.50/1 lb
Pot. Chips Amos brand –$6.50/hf lb, $11.00/lb
Sweet Potato Chips - $8.75/ ½ lb
Herb Salt—$4.50/ 4 oz. bottle
RawAlmondButter-$14.50/8oz, $23.50/16oz
Cashew Butter - $15.00/8oz., $25.00/pt
Garlic Spread - $4.75/5oz

## GREEN PASTURES BLUE ICE

Butter Oil (plain, rasp., butter pecan) 8oz - $56.00
Butter Oil Capsules(120 caps) - $39.90
Royal Blend Fermented Cod Liver Oil & Butter Oil
(chocolate, plain, cinnamon)(8oz) - $43.50
Royal Blend Fermented Cod Liver Oil & Butter Oil
Capsules  (120 caps) - $40.50
Blue Ice Fermented Cod Liver Oil (cinnamon,
orange, mint, plain)(8oz)-$37.50
Blue Ice Fermented Cod Liver Oil Capsules
(120 caps) – $27.50
Fermented Skate Liver Oil (orange)(8oz) - $36.50
Fermented Skate Liver Oil Capsules
(120 caps) – $28.50
Coconut Ghee –$23.50/27oz, $56.00/gal

## ROSITA REAL FOODS

Extra Virgin Cod Liver Oil - $42.00/5 oz

# List of Local Food Clubs

Our website enables you to sign up to become a member with the Amos Miller Organic Farm – **Private Membership Association**. You can conveniently place your order online, to have the farm ship your foods to your door step – via either **FedEx** or **UPS.**

For those of you living in the locations shown below, you can join a local Food Club in your area, instead and place your orders through the Club coordinator or their respective website. These Food Clubs arrange to place their orders as a group of members together, which often saves money due to lower shipping costs.

**Contact information for the local food clubs are shown below, by state and location:**

# Alabama

**Auburn** – Debbie Vail (334) 750-3276
**Birmingham** – Rebecca Rodgers (256) 506-2960

# Arizona

**Phoenix** – Emily Heller (602) 380-4949

# California

**Los Angeles** – Mary Smith (323) 774-2639
**Pasadena** – Rebecca Thormure (310) 804-7073
**San Jose** – Chris Hall (408) 830-4123 or Olga Alekseyeva (408) 641-0262
**Yuccipa** – Catherine Story (760) 680-1816

# Colorado

**Denver** – Carol Oliver (303) 250-7687

# Florida

**Miami/Fort Lauderdale** – Niki (646) 627-4245
**Orlando** – Diana Coughlin (407) 739-3446
**Titusville** – Michele Collins (407) 221-6173 or Ginny Hall (386) 589-6931
**Tampa** – Melissa Evans (813) 679-3424
**West Palm Beach/Martin County** – Anke Meyn (561) 512-7695 (www.pasturedfarmfoodclub.com)

# Georgia

**Kennesaw** – Cindy Tuft (770) 886-1509

**Annapolis** – Liz Retiqz (301) 807-5063

# Massachusetts

**Burlington** – Karen Potter (781) 799-5329

**Chelsea** – Cindy Gray (978) 767-0472 or Monika Vandusion (774) 573-0075

# New Jersey

**Northern NJ** – Paul Redcay (717) 729-5067 (Madison, Montchair, Bergenfield and Haworth)

**Southern NJ** – Aaron Stoltzfus (717) 672-1586 or Sam (717) 672-1587 (Bordentown, Collinswood-Deptford, Dennisville, Cape May Courthouse, Mulica Hill, New Brunswick-N. Trenton)

# New York

**Eastern NY** – Paul Redcay – (717) 729-5067 (Chestnut Ridge, New Paltz, **Beacon, Mt.** Kisco, White Plains)

# North Carolina

**Cedar Point** – Heather Charlotte (252) 342-7517– www.ncfarmfreshfood.com

**Durham** – Jacob Williams (919) 414-9107 or Stella (919) 227-6504

# Pennsylvania

**Allentown** – Paul Redcay (717) 729-5067

# How it works!

Our **Amos Miller Organic Farm** is located in Bird-in-Hand Pennsylvania. We are a private membership association, where the food we deliver is traceable, pure and grown on nutrient dense soil, under traditional time-honored methods. You can read more about our farm here: **Amos Miller Organic Farm**.

You must register as a member and pay a $35 membership fee to purchase from our website. If you are an existing direct member with the Amos Miller Organic Farm you will receive a $35 credit that will be issued to your credit card after the farm ships your first food order. Please email members@amosmillerorganicfarm.com to let us know of your farm membership so that we can confirm it. Since the website requires significant ongoing maintenance you will be charged an annual maintenance fee of $35 on the anniversary of your website membership signup to maintain your website account.



(/)

Home (/) | FedEx/UPS (/FedExUPS_ep_73.html)

# FEDEX/UPS

Thanks for your interest in our food! We deliver nationwide via FedEx/UPS, including Hawaii and Alaska. If FedEx/UPS deliver to your area, then you're able to receive our food!

Fedex/UPS Ground provide us with their best rates. The farm carefully packages/insulates the food to preserve frozen and perishable items up to three days. If you have a carrier of preference, please specify in the "Comments" section when you place an order. Our ability to ship GROUND depends on what day you order and where you are located. The map below outlines the different regions with their respective transit time.

**Shipping from ZIP/Postal code: 17505**



## How much does the shipping cost?

When you place an order, an estimate of your shipping fee will be provided by the system

The final price may vary depending on the weight and shipping speed, GROUND vs EXPRESS.

Once the package gets picked up by FedEx/UPS, the exact shipping fee will be added to your total

# What happens after I place an order?

Your credit card is not processed at the time you place an order because modifications will be made to reflect weight adjustments, temporarily unavailable items, and FedEx/UPS shipping fees.

Once the food ships, you will receive an email containing the final invoice and tracking number.

Order Details:

- Maximum recommended transit time is THREE days

- Latest scheduled arrival day is FRIDAY

- Orders placed MONDAY TUESDAY WEDNESDAY ship 2-day Ground via FedEx/UPS

- Orders placed after 10 AM WEDNESDAY ship the following Monday to avoid weekend transit

- Rushed orders placed before 10 AM THURSDAY ship only EXPRESS, at additional cost

- Remote areas may require EXPRESS shipping

- Ex: if you place an order THURSDAY and you're not located in the red area, it will ship EXPRESS to ensure FRIDAY arrival

- Orders exceeding 70 pounds ship in multiple boxes

- Items are packaged in cooler boxes containing ice packs for insulation


Please make sure that someone is home on the delivery day to receive your order

A great feature provided by FedEx is the option to schedule delivery times for residential deliveries!

Once you receive a notification email stating that your package has shipped, go to FedEx Delivery Manager (https://www.fedex.com/apps/fdmenrollment/?locale=en_US) or UPS My Choice (https://www.ups.com/us/en/services/tracking/mychoice.page) to schedule a suitable delivery time for your busy schedule.

If you have questions about your order prior to shipment or regarding a problem upon delivery, please call the farm at (717) 556-0672.

Members that live within close proximity to our farm are welcomed to pick up the food directly from us.

**PRICE LIST & NEWSLETTER**

*Monday through Thursday with delivery by Friday for UPS and by Saturday for FedEx and we use well insulated boxes that are carefully cold packed to allow for transit times.*

**Shipping from ZIP/Postal code: 17505**



🟥 1 Day  ⬜ 2 Days  🟧 3 Days  🟩 4 Days  ⬛ 5 Days  🟨 6 Days  🟥 7+ Days

*Your credit card is not processed when you place your order as we will need to modify it to reflect out-of-stock conditions, the actual weights of items sold by the pound and the shipping charges which are made up of the FedEx/UPS delivery charge and the cost of cold packaging which includes well insulated boxes and ice packs. The charge for cold packaging ranges from $10 to $17 depending on the size of the insulated box. The usual FedEx/UPS charges are $18 or more depending on the weight of the shipment and the distance from the farm. Shipping charges are relatively fixed so the larger the order the smaller the shipping cost becomes as a percentage of the total cost.*

*At the time you place your order you can choose to receive an estimate of the shipping charges before proceeding with your order. In that case the farm will not finalize your order with exact weights of items sold by the pound but we will calculate the shipping charges and send you an email by the next business day advising you so you can decide whether or not to proceed with the order. We will not place your order until we hear from you that you want to proceed.*

*After you place an order and the farm processes it to reflect out-of-stock conditions and the actual weights of items sold by the pound and the shipping charges the farm will include the detailed invoice with your shipment. The invoice you receive from the website will show your original order, the total dollar amount of the farm adjustments, the shipping and packaging charges and the invoice total which we will charge to your credit card. If there are any discrepancies in your order please call the*

*ship the joint shipping together to these addresses plus... to minimize the possibility of breakage we suggest that you choose plastic containers over glass when you have a choice. If you have questions about your order before shipping or there is a problem with your order once it is delivered please call the farm at (717) 556-0672. Members can also pick up their food order at the farm in person.*

# How do I become a member?

Please create your account by completing the membership sign up. Be sure to sign up for our **newsletter** which you can do at the bottom of any page, to be able to receive our emails.

Once you have created your account you can start placing orders. Your membership fee is $35.00 which renews annually to help defray the cost of website maintenance and the renewal date is the anniversary date of your sign up.

**Become a member risk free – if after your first order you are unhappy for any reason and you decide to cancel your membership, we will cheerfully refund your membership fee back to your credit card. For current direct farm members requesting access to this website this refund policy applies if you decide to cancel before your first order and before you receive your $35 credit on your credit card.**

# Can I cancel my membership?

You can cancel your membership at any time. Just send us an email to Membership

If you decide to cancel your membership after your second order we do not prorate membership fees and there is no refund.

# How to place an order?

Orders are placed through the website. There is a 10 PM deadline the day before shipping to place an order to ship Monday through Thursday. When placing an order, please specify in the **comment box** if you want **"fresh"** or **"frozen"** meats. Meats are normally shipped frozen. Also write **"NO SUBSTITUTES"** if you don't want the farm to replace an item with a similar item if the one you ordered is **"out of stock"**.

*you can add or delete anything you like and the cart will be held until you finalize your order*

*In the event that you forgot an item after you submitted your order, no problem. Although you can not "edit" your order any longer, as long as these changes are made by noon the day of shipment you can call the farm at (717) 556-0672 and we can add additional items to your order or replace/delete an item from your order.*

# Does the farm offer free items?

Yes, the farm often offers a **free food item every month** – to those who order $100 or more in food in a single order and request the free food item in the Order Notes on the checkout page. The free food item is available once per week. These offers are in the monthly farm newsletter which is sent to members who sign up for our **newsletter**. You can sign up for the newsletter at the bottom of any web page.

# What payment methods are accepted?

We accept all major credit cards as our sole payment method. When you place your order you will be prompted for your credit card information. Your card will not be charged at the moment you place your order, as the exact shipping charges and actual **weights** of products or products that may be **out-of-stock** are **not known until the order has been processed by the farm**.

Once the order is processed your invoice will be adjusted and marked **"Complete"** to reflect actual weights and shipping charges and that invoice will be emailed to you. A detailed invoice showing any changes to your order will be included with your shipment. Your credit card will then be charged. Your order must be paid before we ship your order. We will contact you if there is a problem processing your card.

# Is there an order minimum?

No, we do not have order minimums, but most members' typical orders are $125 and up in view of cold packaging and shipping costs

# What if I have to cancel my order?

Please call the farm at (717) 556-0672 before noon on the day of shipment to let us know you wish to cancel your order.

**missing?**

Eggs are the most fragile items we ship. Our egg prices include $1 per dozen for insurance against breakage. If any eggs arrive broken please inform us at the farm at (717) 556-0672 and keep a tally. When the number of broken eggs reach a dozen we will ship you a dozen replacement eggs free in a future order. In the event that an item was shipped incorrectly or is missing from your order please call us at (717) 556-0672 so we can assist you and help you resolve the issue.



GOVERNMENT
EXHIBIT
2
Flanagan

### Miller's Organic Farm - A Private Membership Association
### MEMBERSHIP CONTRACT (v.1-April2011)
**Fax to 775-262-7202 OR Mail to: Miller's Farm 648 Millcreek School Rd, Bird-in-Hand, PA 17505**

I, _____, for membership fee paid in hand, do hereby apply for membership in Miller's Organic Farm, a private membership organization. With the signing of this membership agreement, I/we accept the offer made to become a member of Miller's Organic Farm and have read and agree with the following Declaration of Purpose from Article I of Miller's Organic Farm's Articles of Association.

1.      This Association of members hereby declares that our main objective is to maintain and improve the civil rights, constitutional guarantees, and political freedom of every member and citizen of the United States of America. We believe that the Constitution of the United States is one of the best documents ever devised by man, and the signers of the Declaration of Independence did so out of love for their country.

2.      We believe that the First Amendment of the Constitution of the United States of America guarantees our members the rights of free speech, petition, assembly, and the right to gather together for the lawful purpose of advising and helping one another in asserting our rights under the Federal and State Constitutions and Statutes.

        IT IS HEREBY Declared that we are exercising our right of "freedom of association" as guaranteed by the 1st and 14th Amendments of the U.S. Constitution and equivalent provisions of the various State Constitutions. This means that our association activities are restricted to the private domain only.

3.      We declare the basic right of all of our members to select spokesmen from our number who could be expected to give wisest counsel and advice concerning the need for, and availability and access to food and to select from our number those members who are the most skilled to assist and facilitate the actual performance and delivery of products.

4.      We proclaim the freedom to choose and decide for ourselves the types of products, services, and methods that we think best for healthy eating and preventing illness and disease of our minds and bodies and for achieving and maintaining optimum wellness. We proclaim and reserve the right to include healthy food options that include, but are not limited to, cutting edge discoveries and farming practiced or used by any types of healers or therapists or practitioners the world over whether traditional or nontraditional, conventional or unconventional.

5.      More specifically, the mission of our Association is to provide members with the highest level of food quality and the most effective methods of producing said foods. We offer members these food options. Our Association understands that wellness has many dimensions and strives every day to stay on the leading edge of new technology that leads to better wholesome foods. The Association strives and provides the healthy food choices in the most effective means of delivery of these foods at an affordable fee. More specifically, the Association specializes in raw milk products and grass-fed meats and demands access to foods of our choice. The Association offers to members alternates to other type foods and as a service and benefit to members.

6.      The Association will recognize any person (irrespective of race, color, or religion) who is in accordance with these principles and policies as a member, and will provide a medium through which its individual members may associate for actuating and bringing to fruition the purposes heretofore declared.

### MEMORANDUM OF UNDERSTANDING

I understand that the fellow members of the Association that provide products and services, do so in the capacity of a fellow member and not in the capacity as a licensed wholesaler, retailer or provider. I further understand that within the association no wholesaler/retailer-customer relationship exists but only a contract member-member Association relationship. In addition, I have freely chosen to change my legal status as a public consumer/customer to a private member of the Association. I further understand that it is entirely my own responsibility to consider the recommendations and products offered to me by my fellow members and to educate myself as to the efficacy, risks, and desirability of same and the acceptance of the offered or recommended products and is my own carefully considered decision. Any request by me to a fellow member to assist me or provide me with the aforementioned recommendations or products is my own free decision in an exercise of my rights and made by me for the benefit, and I agree to hold the Trustee(s), staff and other worker members and the Association harmless from any unintentional liability for the results of such recommendations and products, except for harm that results from instances of a clear and present danger of substantive evil as determined by the Association, as stated and defined by the United States Supreme Court.

The Trustee and members have chosen Amos B. Miller as the person best qualified to perform services to members of the Association and entrust them to select other members to assist them in carrying out that service.

In addition, I understand that, since the Association is protected by the First and Fourteenth Amendments to the U.S. Constitution, it is outside the jurisdiction and authority of Federal and State Agencies and Authorities concerning any and all complaints or grievances

against the Association, any Trustee(s), members or other staff persons. All rights of complaints or grievances will be settled by an Association Committee and will be waived by the member for the benefit of the Association and its members. Because the privacy and security of membership records maintained within the Association, which have been held to be inviolate by the U.S. Supreme Court, the undersigned member waives complaint process. Any customer/consumer records kept by the association will be strictly protected and only released upon written request of the member. I agree that violation of any waivers in this membership contract will result in a no contest legal proceeding against me. In addition, the Association does not participate in any insurance plans.

I agree to join the Association, a private-membership association under common law, whose members seek to help each other achieve better health and live longer with good quality products.

I understand that the providers who are fellow members of the Association are offering me products, services and benefits that do not necessarily conform to conventional products on the market.

As a member, I accept the goals of helping my body function better and choosing food products that are very safe, realizing that no product testing is foolproof. Other aspects of informed consent will take place in my discussions with the providers and my fellow members of the Association.

My activities within the Association are a private matter that I refuse to share with State Medical Board(s), the FDA, FTC, State Milk Board(s), USDA, Agricultural Board(s) and any other governmental agency without my expressed specific permission. All records and documents remain as property of the Association, even if I receive a copy of them. I fully agree not to file a liability lawsuit against a fellow member of the Association, unless that member has exposed me to a clear and present danger of substantive evil. I acknowledge that the members of the Association do not carry liability insurance.

The Trustee(s) shall have the right to sanction a member upon unanimous vote of the Trustee(s), after a hearing of the facts where the member may be present after notification. The sanctions include removal from active membership or imposing any other special and necessary conditions upon any member who shall discredit or bring harm to the Association in any manner.

I enter into this agreement of my own free will or on behalf of my dependent without any pressure or promise of products. I affirm that I do not represent any State or Federal agency whose purpose is to regulate and approve products. I have read and understood this document, and my questions have been answered fully to my satisfaction. I understand that I can withdraw from this agreement and terminate my membership in this association at any time. These pages and Article 1 of the articles of association of the Association consist of the entire agreement for my membership in the Association and they supersede any previous agreement.

I understand that the membership fee entitles me to receive those benefits declared by the Trustee(s) to be "general benefits" free of further charge. I agree to pay as levied those benefits that I receive that are declared by the Trustees to be "special assessments", per Fee Schedule.

I enclose the sum of $35.00 (non-refundable) as consideration for my lifetime membership contract, "lifetime" meaning the lifetime of the membership association, said term beginning with the date of the signing of this contract, and by these presents do hereby certify, attest and warrant that I have carefully read the above and foregoing Miller's Organic Farm Contractual Application for Membership, and I fully understand and agree with same.

IN WITNESS WHEREOF I set my hand this _____ day of _____, 20 _____

_____
Member's Name (Please print legibly) (and name of legal guardian if applicant under 18 years)

_____
Member's Signature (and signature of legal guardian if applicant under 18 years)

Members Address and Phone #:

_____          _____          _____          _____
Street                                     City                      State             Zip Code

_____          _____
Home/Work/Cell #'s                         Email Address

**Miller's Organic Farm**

By _____

Approved and accepted this _____ day of _____, 20 _____



**U.S. Department of Justice**

*United States Attorney*

*Eastern District of Pennsylvania*

*Gerald B. Sullivan, AUSA*
*Direct Dial: (215) 861-8786*
*Facsimile: (215) 861- 8618*
*E-mail Address: Gerald.Sullivan@usdoj.gov*

*615 Chestnut Street .*
*Suite 1250*
*Philadelphia, Pennsylvania 19106-4476*
*(215) 861-8200*

August 9, 2016

**VIA FedEx**
Mr. Amos Miller
Miller's Organic Farm
648 Millcreek School Road
Bird-in-Hand, PA 17505



> **Re:** *USA v. Miller's Organic Farm/Miller,*
> **U.S. District Court, EDPA, No. 16-cv-2732**

Dear Mr. Miller:

As you know, on June 30, 2016, the Court ordered your farm and you to comply with the U.S. Department of Agriculture's April 4, 2016 subpoena *duces tecum.* Among other things, the Court ordered your farm and you to "produc[e] the documents that the subpoena . . . calls for." The Court further ordered that "Violation of this Order is punishable as a contempt of court."

Among the categories of documents that the subpoena requested were, for the period January 2016 to present: "(9) Sales journals, invoices, and all other sales information for any and all meat, meat food products, poultry and/or poultry products"; and "(10) Computer generated documents, including records related to internet sales."

Under the Court's June 30 Order, which permitted the U.S. Department of Agriculture's Food Safety and Inspection Service ("FSIS") to begin its inspection on July 11, 2016, FSIS has been attempting (since July 11) to obtain these documents from your farm and you. I understand that, most recently, on July 28, 2016, you: (1) advised FSIS Investigator Paul Flanagan that you maintain relevant sales records on your neighbor's computer; (2) showed Investigator Flanagan one of your farm's invoices; (3) expressed concern about producing invoices on which your customer-members' names and addresses appear; and (4) offered to produce, instead, six months of "sanitized" records (that is, records from which customers' names and addresses, including city and state information, would be redacted). I further understand that Investigator Flanagan, in immediate follow-up, then requested that, within 10 days, you produce three months of such invoices, from which (he informed you) you could redact your members' names and street addresses but not city, state, and other information.

According to Investigator Flanagan, yesterday, August 8: (1) you called him to state that you are unwilling to provide any such sales records that include *city or state*

Mr. Amos Miller
Miller's Organic Farm
August 9, 2016
Page 2

customer-member information, even if customer names and addresses are redacted; (2) Investigator Flanagan responded that FSIS does not have an interest in tracking down your members and would not, in any event, be able to identify them based on city and state information; but (3) you nevertheless refused to provide the requested, redacted sales information.

This office would like to avoid the necessity of having to file, next week, a motion with the Court seeking an order requiring your farm and you to show cause why you should not be held in civil contempt of the Court's June 30 Order.  To avoid the need for such a motion, we are providing you until this Friday morning, August 12, 2016, to call Investigator Flanagan and arrange a time on or before Tuesday, August 16, 2016, when you will produce the requested records.  Moreover, to provide you with further assurance that FSIS is not seeking the records in order to identify your members, but rather merely (as Investigator Flanagan explained to you yesterday) to corroborate the *interstate* aspect of your sales of meat and poultry products, the produced records can redact name, address, *and city* information but must include all other (including state) information.

If you have any questions for me–or, if your farm or you retain an attorney, if the attorney has any questions for me–please do not hesitate to call me, or to have the attorney call me, at (215) 861-8786.

Very truly yours,

ZANE DAVID MEMEGER
United States Attorney

GERALD B. SULLIVAN
Assistant United States Attorney

00051
00200
05939014

fedex.com 1.800.GoFedEx 1.800.463.3339

06706

MUR4

**FedEx**
Express

**Package**
**US Airbill**

FedEx
Tracking
Number  **8099 5142 3095**

**1 From** Please print and press hard.

Date _____

Sender's
Name _Es/it Sullivan_____   Sender's FedEx
Account Number  1421-7693-9

Company _USDOJ/US ATTY OFC_____

Address _615 CHESTNUT ST STE 1250_____

City _PHILADELPHIA_____ State _PA_ ZIP _19106-4404_

**2 Your Internal Billing Reference**
First 24 characters will appear on invoice.

**3 To**
Recipient's
Name _Mr. Amos Miller_  Phone _017 556-0612_

Address _648 Millcreek School Rd._

City _Bird-In-Hand_ State _PA_ ZIP _17505_

**4 Express Package Service**   *To most locations.

Form
ID No.  **0215**

Packages up to 150 lbs.

**5 Packaging**   *Declared value limit $500.

☐ FedEx Envelope*   ☐ FedEx Pak*   ☐ FedEx
Box   ☐ FedEx
Tube   ☐ Other

**6 Special Handling and Delivery Signature Options**

☑ FedEx Envelope*

☐ No   Does this shipment contain dangerous goods?

☐ No Signature Required   ☐ Direct Signature   ☐ Indirect Signature

**7 Payment** Bill to:

☑ Sender   ☐ Recipient   ☐ Third Party   ☐ Credit Card   ☐ Cash/Check

Total Packages _____ Total Weight _____ Total Declared Value $ _____

0122567324

611

735 Pinkerton Road
Mount Joy, PA 17552



Call Us Today
717-653-0303







### Full service

We offer a full range of services from slaughter to further processed products and everything necessary in between. While we cannot offer every product or service, we do our best to offer as many options as possible so that our customers do not have to send their product to another processor for additional services. In the event that we are unable to offer the product or service that you are looking for, we will do our best to connect you with a processor who can.

**Within reason, we will do our best to give you as many options as possible**

From specialty cuts to curing and packaging options, we will do our best to meet your unique marketing needs

**If you are a consumer or farmer interested in the specific processing procedures for each species, please see the following**
**The information can be rather technical but if you want to know details, this is where to find them.**



Home    Products/Services    How We Operate    Our History    Our Network    Contact

View the details of our beef processing ..    View the details of our bison processing    View the details of our pork processing

*Beef Work Order*    *Bison Work Order*    *Pork Work Order*

**Smucker's Meats no longer process deer meat.**

Because of the volume of USDA inspected products we process it has become increasingly difficult to maintain the appropriate level of separation between inspected and non inspected products. We believe our first obligation is producing safe and wholesome products under USDA inspection.

**USDA Inspected**

All of the services and products that we offer are under the vigilant eye of USDA inspectors. A USDA inspector is present whenever any slaughter operations are conducted  The inspector's job is to monitor and verify that livestock are healthy when slaughtered, handled humanely, and the finished carcasses are clean so as to reduce the possibility of contamination  A second USDA inspector monitors all other processes and while this inspector is not required to be on site at all times, this individual is responsible for checking and verifying all the records associated with the food safety programs that we have established. USDA inspection is not a license or certification, rather it is granted to plants that meet federal requirements as long as the plants adhere to the applicable regulations.

**Species processed** - We currently only process Beef, Bison, and Pork

**Species not processed** - We do not process lamb, goat, poultry, and verison

**Non-inspected products**

Due to the high standards of USDA inspection and the physical limitations of our facility, we do not offer processing of products that have not been subjected to USDA inspection. We will process products from meat that has been processed at other plants but it must come to us with the proper labeling and marks that it was processed under USDA inspection prior to arrival at our facility. Meat products that arrive without the proper inspection or proof of inspection, will not be accepted for processing at this facility. This includes but is not limited to deer meat.

**735 Pinkerton Road**
**Mount Joy, PA 17552**



**Call Us Today**
**717-653-0303**

# Customized Processing

## What is a full service-customized USDA inspected processor?



### Full service

We offer a full range of services from slaughter to further processed products and everything necessary in between. While we cannot offer every product or service, we do our best to offer as many options as possible so that our customers do not have to send their product to another processor for additional services. In the event that we are unable to offer the product or service that you are looking for, we will do our best to connect you with a processor who can.

**Within reason, we will do our best to give you as many options as possible.**

From specialty cuts to curing and packaging options, we will do our best to meet your unique marketing needs.

If you are a consumer or farmer interested in the specific processing procedures for each species, please see the following. The information can be rather technical but if you want to know details, this is where to find them.



## Beef Processing

View the details of our beef processing
*More*

*Beef Work Order*

## Bison Processing

View the details of our bison
processing   *More*

*Bison Work Order*

## Pork Processing

View the details of our pork processing
*More*

*Pork Work Order*

**Smucker's Meats no longer process deer meat**

Because of the volume of USDA inspected products we process it has become increasingly difficult to maintain the appropriate level of
separation between inspected and non inspected products. We believe our first obligation is producing safe and wholesome products
under USDA inspection

**USDA Inspected**

All of the services and products that we offer are under the vigilant eye of USDA inspectors. A USDA inspector is present whenever any
slaughter operations are conducted. The inspector's job is to monitor and verify that livestock are healthy when slaughtered, handled
humanely, and the finished carcasses are clean so as to reduce the possibility of contamination. A second USDA inspector monitors all
other processes and while this inspector is not required to be on site at all times, this individual is responsible for checking and verifying
all the records associated with the food safety programs that we have established. USDA inspection is not a license or certification,
rather it is granted to plants that meet federal requirements as long as the plants adhere to the applicable regulations

**Species processed** - We currently only process Beef, Bison, and Pork

**Species not processed** - We do not process lamb, goat, poultry, and verison

**Non-inspected products**

Due to the high standards of USDA inspection and the physical limitations of our facility, we do not offer processing of products that
have not been subjected to USDA inspection. We will process products from meat that has been processed at other plants but it must
come to us with the proper labeling and marks that it was processed under USDA inspection prior to arrival at our facility. Meat products
that arrive without the proper inspection or proof of inspection, will not be accepted for processing at this facility. This includes but is not
limited to deer meat

© 2019 Smuckers Meats LLC   |   Website By *Webtek Web Design*      735 Pinkerton Road Mount Joy PA 17552      717-653-0303      Site Map

Photos Courtesy Jess Detrick Photography & Bill Schilling Photography



**U.S. Department of Justice**

*United States Attorney*

*Eastern District of Pennsylvania*

*Gerald B Sullivan, AUSA*
*Direct Dial: (215) 861-8786*
*Facsimile: (215) 861-8618*
*E-mail Address  Gerald.Sullivan@usdoj.gov*

*615 Chestnut Street*
*Suite 1250*
*Philadelphia, Pennsylvania 19106-4476*
*(215) 861-8200*

March 27, 2017



**VIA EMAIL & ECF**
Honorable Edward G. Smith
Judge, United States District Court
The Holmes Building, 4th floor
101 Larry Holmes Drive
Easton, PA 18042

Re:    **USA v. Miller's Organic Farm & Amos Miller, No. 16-cv-2732**

Dear Judge Smith:

As Your Honor is aware, I represent plaintiff United States of America in this action enforcing an April 2016 United States Department of Agriculture ("USDA"), Food Safety and Inspection Service ("FSIS") subpoena. The subpoena sought inspection access to meat-and-poultry-related documents and facilities of defendant Miller's Organic Farm, which is located in Lancaster County, Pennsylvania and owned by defendant Amos Miller.

This letter is the United States' case-closing status report and fulfills Paragraph 11 of the Court's November 3, 2016 Order. (Docket Entry No. 30.)

The FSIS inspection access that the Court enforced in this action revealed serious statutory and regulatory violations that defendants, despite notice and opportunity, have failed to correct. Therefore, as explained below, although no further judicial enforcement of *the April 2016 subpoena* is required, and this action may now be closed, defendants' continuing failures to correct those violations may soon lead to the United States seeking further federal district court enforcement in a separate proceeding.

**Background and Status**

Following a June 28, 2016 show cause hearing, at which defendants appeared *pro se*, Your Honor granted FSIS certain requested access to Miller's Organic Farm's facilities and records. *See* Dkt. Entry No. 7 (June 30, 2016 Order). When the United States later moved for relief on grounds that Mr. Miller had not adequately permitted the ordered access, the Court held a November 1, 2016 show cause hearing, at which: (1) defendants appeared with counsel for the first time; and (2) the parties entered into a Consent Order. *See* Dkt. Entry Nos. 16 (government's motion), 28 (minute entry), and 30 (Consent Order).

Honorable Edward G. Smith
March 27, 2017
Page 2

The terms of the Consent Order included that: (1) by December 23, 2016, and in order to avoid a $500-per-day non-compliance penalty, defendants would complete a rolling production of certain redacted meat-and-poultry-related sales invoices for three calendar months of 2016; (2) within 90 days after the end of that production, FSIS could return to Miller's Organic Farm to assess whether defendants had cured FSIS-determined/noticed violations; and (3) within ten days following FSIS's return visit, the United States would file a case-closing status report.

By December 23, 2016, defendants produced to the United States (in a highly disorganized format) meat-and-poultry-related invoices. In a January 12, 2017 affidavit, Amos Miller testified that these represented, to the best of his knowledge, all such Miller's Organic Farm invoices for the months of July, August, and September 2016. Although many invoices failed to include purchasers' State location information, Mr. Miller further testified that, to the best of his knowledge, his agents and he had not redacted such information. Based on Mr. Miller's affidavit testimony, the government proceeded as though defendants had completed the ordered invoice production.

Accordingly, on February 10, 2017, USDA/FSIS's Enforcement and Litigation Division sent Mr. Miller – by Certified Mail, FedEx, and First-class mail – the enclosed "Notice of Warning" letter. The Notice of Warning stated, in part, that:

1. The Federal Meat Inspection Act (Meat Act), 21 U.S.C. § 601, *et seq.* and the Poultry Products Inspection Act (Poultry Act), 21 U.S.C. § 458, *et seq.*, prohibit the "[s]ale, transportation, and offering for sale or transportation of **non-exempt[, non-federally inspected]** meat and poultry for human consumption[.]"

2. The investigation fruits of FSIS's April 2016 subpoena showed that Miller's Organic Farm is "engaged in the slaughter, processing, sale and transportation of uninspected meat and poultry products in violation of" these statutes.

3. For example: (a) "[FSIS] officials . . . observed and photographed **non-federally inspected** meat and poultry products bearing the Miller's Organic Farms label"; and (b) "[i]nvestigators obtained information showing that **non-exempt meat and poultry products were non-federally inspected** and [were] sold to various retail customers" "across state lines."

4. "Miller's needs to take action to bring its food operations into compliance with FSIS laws and regulations. To achieve compliance, Miller's may [1] apply for and obtain a grant of Federal inspection service, [2] conduct retail and/or custom operations under the exemptions from inspection as provided in the statutes and regulations, and/or [3] cease any activities involving FSIS-regulated products."

> a. "For information on how to apply for a grant of inspection, you may contact the Office of Field Operations, Philadelphia District Office at (215) 597-4219. You may also access the FSIS website at http://www.fsis.usda.gov"
> b. "For more information regarding retail exempt operations, you may contact the Compliance and Investigations Division, Northeast Region at (215) 430-6222."

5. "The Agency takes violations of the statutes and regulations very seriously and strictly enforces the inspection, exemption, and other requirements to ensure food safety and protect the public health. To this [end], FSIS applies its [Meat Act and Poultry Act] authorities . . . to control, detain, and seize meat and poultry products that are adulterated, misbranded, non-federally inspected, or not exempt from inspection. . . . FSIS also initiates enforcement actions and sanctions, consistent with its public health objectives, for continued or serious violations. In addition to warning letters to seek compliance, the statutes provide for criminal and civil sanctions, including injunctions to enforce and prevent violations, and criminal prosecution."

6. By "no later than March 23, 2017," "[c]ompliance investigators will conduct follow-up activities at your facility to verify your compliance with FSIS requirements. . . . Please be advised that FSIS may initiate action, including referral to the United States Attorney for initiation of criminal or civil proceedings, if the Agency determines that [you] continue to violate Agency requirements, despite notice and opportunity to comply. Also, please be advised that meat and poultry products found at the facility that are in violation of Agency requirements are subject to detention and seizure."

The Notice and Warning letter closed by providing Mr. Miller with information on how to contact the Enforcement and Litigation Division and FSIS with "any questions regarding this letter, the law, or available compliance options."

On March 16, 2017, three FSIS investigators conducted a follow-up inspection/ compliance visit to Miller's Organic Farm. The investigators focused on whether and to what extent, if any, Miller's Organic Farm had corrected the non-compliance items identified in the Notice of Warning letter.

According to the investigators, Mr. Miller acknowledged during the follow-up visit that: (1) he received the Notice of Warning letter, which in his view offered no realistic solutions, because his customer-members do not want their products to be federally inspected; and (2) consistent with the investigators' observations, he had not changed his business practices that FSIS had identified as non-compliant and unlawful. That is, Miller's Organic Farm continues to slaughter, to process, to offer for sale and transportation, and to transport and sell to retail

Honorable Edward G. Smith
March 27, 2017
Page 4

customers across the United States – **without any USDA inspection or exemption from inspection** – Miller's Organic Farm's meat, meat food, and poultry products.

At the conclusion of the March 16, 2017 inspection, the FSIS investigators engaged in a question-and-answer session with Mr. Miller and several of his employees. The topics included (as during past inspection visit discussions) the custom slaughter exemption, the retail sales exemption, and the federal inspection requirement. An FSIS investigator once again offered to provide information on how to apply for a grant of federal inspection and invited Mr. Miller and his employees to contact him with any further questions. The investigators also once again stressed to Mr. Miller that he must take prompt action to become federally compliant.

As directed in the Court's November 3, 2016 Order, the United States now provides this status report ten days following FSIS's site visit.

### Defendants' Continuing Non-Compliance

This civil action sought only to enforce subpoenaed FSIS access to Miller's Organic Farm and its records so that FSIS could assess whether Miller's Organic Farm's operations were and are complying with the Meat and Poultry Acts and their implementing regulations. Although USDA/FSIS did not obtain the full access that it sought and to which it is entitled under law, the access that defendants granted was sufficient to determine, as discussed above, that Mr. Miller and Miller's Organic Farm are non-compliant with these statutes and regulations requiring federal inspection. Therefore, the Court may dismiss this action.

Now that FSIS has provided Mr. Miller with ample notice and opportunity to correct the warned-about violations or, at the very least, to agree to a reasonable plan of correction, his continuing violations put him at immediate risk of further enforcement, as described in the Notice of Warning letter. This includes the risk that USDA/FSIS will detain and/or seize his meat and poultry products and/or that USDA/FSIS may refer the above-described findings of violations to the United States Department of Justice for consideration of criminal and/or civil enforcement against Mr. Miller and/or Miller's Organic Farm. Civil enforcement, for example, could include a federal district court Complaint in a new civil action seeking injunctive relief.

Respectfully,
LOUIS D. LAPPEN
Acting United States Attorney

GERALD B. SULLIVAN
Assistant United States Attorney

Encl. (Notice of Warning Ltr. dated Feb. 10, 2017 from USDA/FSIS to Amos Miller)
cc: Mr. Amos Miller, *pro se* (via FedEx) (w/ encl.)